TYSON, Judge.
 

 *143
 
 Marcus Alan Parson ("Defendant") appeals from judgment entered after the trial court denied his motion to suppress. Defendant pled guilty to trafficking methamphetamine by manufacturing, possession of methamphetamine precursor chemicals, and manufacturing methamphetamine, subject to and preserving his right to appeal the trial court's denial of his motion to suppress. We reverse and remand.
 

 I. Factual Background
 

 On 28 October 2014, Defendant was indicted for trafficking methamphetamine by manufacturing, trafficking methamphetamine by possession, manufacturing methamphetamine, felony conspiracy to manufacture methamphetamine, maintaining a vehicle/dwelling/place
 
 *144
 
 for controlled substances, and possession of methamphetamine precursor chemicals.
 

 Defendant filed a motion to suppress the evidence seized during execution of the search warrant. Defendant argued the affidavit attached to the application for the search warrant did not show probable cause linking the property located at 394 Low Gap Road to the evidence being sought. Defendant also argued the affiant acted in bad faith or reckless disregard of the facts when preparing and presenting the application and affidavit for the search warrant.
 

 A. Affidavit
 

 State Bureau of Investigation ("SBI") Special Agent Casey Drake prepared the application for the search warrant and the accompanying affidavit. This case was her first occasion to draft an application for a search warrant for a suspected methamphetamine laboratory. She consulted with other investigating officers to prepare the application and form her statement to show probable cause. Her statement in support of probable cause outlined the following facts.
 

 On 10 September 2014 at 3:30 p.m., Defendant purchased "Decongestant 12hr Max" from a local Wal-Mart store. Fifteen minutes later, Julie Brown ("Brown") purchased the same product at the same location. Officers with several different law enforcement agencies established surveillance of Defendant and Brown.
 

 The officers observed Defendant and Brown being picked up by a vehicle driven by James Stratton, the registered owner, with one other person. Defendant and his companions travelled to several stores, including an ABC Store, a dollar store, and a convenience store. Defendant purchased dog food at the dollar store, but the officers did not observe what was purchased at the convenience store.
 

 The four briefly returned to Stratton's residence at 59 Fie Top Road and removed items from the trunk. Stratton and Defendant left again to purchase drinks at a gas station. Brown remained at 59 Fie Top Road.
 

 *532
 
 The affidavit states that prior to returning to 59 Fie Top Road, "Stratton dropped [Defendant] at the burned [sic] residence and blue recreational vehicle/motor home located at 394 Low Gap Road, Maggie Valley, North Carolina." At 6:25 p.m. Haywood County Sheriff's Sergeant Mease and another detective established surveillance at 394 Low Gap Road. Approximately thirty minutes later, they observed Defendant exit the recreational vehicle and walk in the direction towards 59 Fie Top Road. Two other officers approached Defendant as he was walking and
 
 *145
 
 informed him they had information that Defendant was "cooking methamphetamine." Defendant denied this allegation and refused to allow the officers to search the "burned" house or the recreational vehicle.
 

 Around the same time the officers were questioning Defendant, Haywood County Sheriff's Detective McAbee and SBI Special Agent Drake conducted a "knock and talk" conversation with the occupants of 59 Fie Top Road, including Brown and Stratton. Brown acknowledged she had purchased pseudoephedrine earlier that day with Defendant, and that she buys pseudoephedrine to treat her allergies on a regular basis.
 

 Brown stated Defendant had "went home," but she did not know what he was doing there. Although Brown did not know where the pseudoephedrine she had purchased was located, she "presumed" it was with Defendant inside the grocery bags. Brown also admitted that she had used methamphetamine in the past. Stratton allowed the officers to walk around the home located at 59 Fie Top Road with him, but refused to consent to a full search.
 

 The affidavit also contains allegations asserting Defendant and Brown had previously purchased similar products at similar times in the past. Both Defendant and Brown had previously been "blocked" from purchasing pseudoephedrine in the past, indicating they had each exceeded the maximum amount of pseudoephedrine allowed to be purchased within a thirty-day time period. The affidavit further alleges that Brown, not Defendant, had previously purchased other items "consistent with the manufacturing of methamphetamine."
 

 The affidavit briefly addresses the criminal histories of Defendant and Brown. It stated that Defendant and Brown each had previous charges for methamphetamine in Holmes County, Florida. Brown had been convicted and sentenced to three years of probation. Defendant had no previous convictions. Finally, the affiant makes a general statement regarding her knowledge and experience of clandestine methamphetamine laboratories.
 

 Judge Letts signed the search warrant at 10:32 p.m. on 10 September 2014 and it was executed at 11:37 p.m. The search recovered components consistent with a clandestine methamphetamine laboratory.
 

 B. Additional Testimony Presented at Suppression Hearing
 

 The trial court received additional testimony during the suppression hearing from Sergeant Mease and SBI Special Agent Drake. The court acknowledged much of this testimony pertained to information
 
 *146
 
 outside the "four-corners of the search warrant." As a result, the court only relied on this additional information "to the extent that it bears upon any issues of good or bad faith on the part of the applicant, Special Agent Drake."
 

 Sergeant Mease testified he received an email alert from the National Precursor Log Exchange ("NPLEx"), which reported Defendant had legally purchased a pseudoephedrine product at a Wal-Mart pharmacy in Waynesville. Fifteen minutes later, another detective received a similar NPLEx email that Brown had legally purchased a similar pseudoephedrine product at the same location. Defendant and Brown's addresses were both listed as 394 Low Gap Road on these alerts. Sergeant Mease testified he was familiar with both Defendant and Brown and had been "investigating" them for approximately four years prior to 10 September 2014.
 

 Law enforcement officers have access to the records of pseudoephedrine purchases collected by NPLEx and can create "watches" to alert them when a particular individual purchases a pseudoephedrine product. SBI Special Agent Tritt created the NPLEx alert for Defendant. To create the NPLEx email "watch," Special Agent Tritt
 
 *533
 
 entered Defendant's full name, approximate age, and address. Sergeant Mease testified the address that appears on the left side of the alerts is the address entered by the officer who created the "watch."
 

 Both Sergeant Mease and Special Agent Drake were questioned at the suppression hearing regarding the assertion in the affidavit that Stratton had dropped Defendant off at 394 Low Gap Road. Sergeant Mease testified he only suspected Defendant had been dropped off at 394 Low Gap Road. Sergeant Mease based this suspicion on the return time of the vehicle and his knowledge that Defendant lived "up at that area." None of the officers followed Stratton's vehicle up the mountain or personally observed Stratton drop Defendant off at 394 Low Gap Road or anywhere else. Agent Drake confirmed other residences are located on Low Gap Road in addition to 394 Low Gap Road. Sergeant Mease conveyed much of the information used in the application for the search warrant to Special Agent Drake.
 

 C. Trial Court's Order Denying Motion to Suppress
 

 The trial court denied Defendant's motion to suppress and made several findings of fact to support its conclusion that the affidavit was based upon probable cause. The relevant portions of the trial court's order are as follows:
 

 *147
 
 10c. That on September 10, 2014 at approximately 3 30 [sic] pm, Sergeant Mease received an email from NPLEx that Marcus Alan Parson of 394 Low Gap Road in Maggie Valley, North Carolina had purchased a pseudoephedrine product at Wal-Mart Pharmacy #1663 in Waynesville, North Carolina.
 

 10d. That on September 10, 2014 at approximately 3 45 [sic] pm, Detective Jeff Mackey with the Maggie Valley Police Department received an email from NPLEx that Julie Anne Brown of 394 Low Gap Road in Maggie Valley, North Carolina had purchased a pseudoephedrine product at Wal-Mart Pharmacy #1663 in Waynesville, North Carolina. ...
 

 ...
 

 10g. ... At 540 [sic] pm, Stratton's vehicle returned to 59 Fie Top Road but Defendant was no longer in the vehicle.
 
 Neither Drake nor any other law enforcement officer saw Stratton drop off Defendant at the residence at 394 Low Gap Road.
 
 (emphasis supplied)
 

 10h. That at approximately 6:25 pm, Sergeant Mease and his partner, Detective Micah Phillips, set up surveillance upon the residence located at 394 Low Gap Road. Sergeant Mease knew that residence to be Defendant's. ...
 

 10i. ... Brown admitted to Special Agent Drake that she purchased pseudoephedrine with Defendant that day and that she takes it on a regular basis for her allergies Brown said she did not know where the pseudoephedrine was but she presumed that it must be with the groceries with Defendant Brown stated that she and Defendant had gotten into an argument, and that he had gone home She did not know what he was doing. ...
 

 ...
 

 10n. That prior to Special Agent Drake's return to the residence with the search warrant, Defendant overheard that she was on the way over the officers' radio transmission. ...
 

 ...
 

 *148
 
 13d. That with respect to the issue of a nexus between the property to be searched, to wit. 394 Low Gap Road, and the fair probability that evidence related to the manufacture of methamphetamine would be located there, the Court finds that there is a sufficient connection. The search warrant states that Julie Brown told Special Agent Drake that Defendant had "went home", presumably with the pseudoephedrine products Defendant left the 59 Fie Top Road residence in Stratton's vehicle and went in the direction of the 394 Low Gap Road evidence [sic] The vehicle returned to 59 Fie Top Road and Defendant was no longer in the vehicle. Law enforcement believed that Defendant went to that residence and, in fact, set up surveillance and actually saw him there in a short timeframe. And finally, Defendant exercised control and dominion over the residence at 394 Low Gap Road by refusing
 
 *534
 
 law enforcement's request to conduct a warrantless search there. The Court finds, that in the totality of the circumstances, there is a sufficient connection between the property to be searched and a fair probability that evidence of a crime would be found there.
 

 Conclusions of Law
 

 ...
 

 3. That the search warrant application complied in all respects with N.C. Gen. Stat § 15A-244 Specifically, the Court finds that the affidavit of probable cause contained sufficient facts to support a fair probability that evidence of the crimes of manufacturing methamphetamine and possessing methamphetamine precursor chemicals would be found at the property located at 394 Low Gap Road in the Town of Maggie Valley, Haywood County, North Carolina. The information contained in the affidavit was timely and provided ample-connection between the property, Defendant's possessory interest of the same, and evidence of contraband and criminal activity.
 

 After the trial court denied his motion to suppress, Defendant pled guilty to trafficking in methamphetamine by manufacturing, possession of precursor chemicals, and manufacturing methamphetamine, preserving his right to appeal the denial of his motion to suppress. The trial court sentenced Defendant to a minimum of 225 months and a maximum of 282 months of active imprisonment and imposed a $250,000.00
 
 *149
 
 fine. Defendant appeals from the trial court's order denying his motion to suppress.
 

 II. Issues
 

 Defendant argues the trial court erred in denying his motion to suppress because: (1) the affidavit contained material omissions and statements made in reckless disregard for the truth; and, (2) the affiant failed to implicate 394 Low Gap Road with the crime alleged and objects sought.
 

 III. Good Faith of Affiant
 

 A. Standard of Review
 

 "A factual showing sufficient to support probable cause requires a truthful showing of facts."
 
 State v. Severn
 
 ,
 
 130 N.C.App. 319
 
 , 322,
 
 502 S.E.2d 882
 
 , 884 (1998) (citing
 
 Franks v. Delaware,
 

 438 U.S. 154
 
 , 164-65,
 
 98 S.Ct. 2674
 
 , 2681,
 
 57 L.Ed.2d 667
 
 , 678 (1978) ). N.C. Gen. Stat. § 15A-978(a) provides:
 

 A defendant may contest the validity of a search warrant and the admissibility of evidence obtained thereunder by contesting the truthfulness of the testimony showing probable cause for its issuance. ... For the purposes of this section, truthful testimony is testimony which reports in good faith the circumstances relied on to establish probable cause.
 

 N.C. Gen. Stat. § 15A-978(a) (2015).
 

 B. Analysis
 

 This Court has clarified that a "truthful showing of facts" does not require " 'that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily.' "
 
 State v. Fernandez,
 

 346 N.C. 1
 
 , 13,
 
 484 S.E.2d 350
 
 , 358 (1997) (quoting
 
 Franks,
 

 438 U.S. at 165
 
 ,
 
 98 S.Ct. at 2681
 
 ,
 
 57 L.Ed.2d at
 
 678 ). This Court has also recognized an affiant officer's ability to rely upon information reported to her by other officers in the performance of their duties.
 
 See
 

 State v. Horner,
 

 310 N.C. 274
 
 , 280,
 
 311 S.E.2d 281
 
 , 286 (1984).
 

 "Instead, truthful means that the information put forth is believed or appropriately accepted by the affiant as true."
 
 Severn
 
 ,
 
 130 N.C.App. at 322
 
 ,
 
 502 S.E.2d at 884
 
 (internal quotation marks and citation omitted). This Court has further held that "every false statement in an affidavit
 
 *150
 
 is not necessarily made in bad faith. An affiant may be unaware that a statement is false and therefore include the statement in the affidavit based on a good faith belief of its veracity."
 
 Id.
 
 at 323,
 
 502 S.E.2d at 885
 
 .
 

 Prior to a hearing to determine the veracity of the facts contained within the affidavit, a defendant "must make a preliminary showing that the affiant knowingly, or with reckless disregard for the truth, made a
 
 *535
 
 false statement in the affidavit."
 
 Fernandez,
 

 346 N.C. at 14
 
 ,
 
 484 S.E.2d at 358
 
 . If a further evidentiary hearing is held, only the affiant's veracity is at issue at that hearing.
 

 Id.
 

 A defendant's claim asserting the affidavit contained false statements made knowingly or in reckless disregard for the truth, "is not established merely by evidence that contradicts assertions contained in the affidavit, or even that shows the affidavit contains false statements. Rather, the evidence must establish facts from which the finder of fact might conclude that
 
 the affiant alleged the facts in bad faith
 
 ."
 
 Id
 
 . (emphasis supplied).
 

 If a defendant establishes by a preponderance of the evidence that such statements were made in bad faith by the affiant in order to obtain a search warrant, the false information contained in the affidavit must be set aside.
 
 Severn
 
 ,
 
 130 N.C.App. at 322-23
 
 ,
 
 502 S.E.2d at
 
 884 (citing
 
 Franks,
 

 438 U.S. at 155-56
 
 ,
 
 98 S.Ct. at 2676
 
 ,
 
 57 L.Ed.2d at
 
 672 ). Once these statements are omitted, " '[i]f the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.' "
 
 Severn
 
 ,
 
 130 N.C.App. at 323
 
 ,
 
 502 S.E.2d at 884
 
 (quoting
 
 Franks
 
 ,
 
 438 U.S. at 156
 
 ,
 
 98 S.Ct. at 2676
 
 ,
 
 57 L.Ed.2d at
 
 672 ).
 

 In the affidavit at bar, SBI Special Agent Drake stated "Stratton dropped [Defendant] at the burned [sic] residence and blue recreational vehicle/motor home located at 394 Low Gap Road, Maggie Valley, North Carolina." Defendant argues this statement must be excised from the court's probable cause determination as it was made in reckless disregard for the truth. We disagree.
 

 Although the trial court found that "[n]either Drake nor any other law enforcement officer saw Stratton drop off Defendant at the residence at 394 Low Gap Road," the trial court also recognized that it does not necessarily follow that Special Agent Drake made this statement in bad faith.
 
 See
 

 Severn
 
 ,
 
 130 N.C.App. at 323
 
 ,
 
 502 S.E.2d at 885
 
 . Special Agent Drake's testimony during the suppression hearing, used to determine whether she had acted in good faith, clarified she received much of the information to draft the application for the search warrant from other officers participating in the surveillance of Defendant.
 

 *151
 
 Special Agent Drake testified she never observed Defendant being dropped off at 394 Low Gap Road, but had received this information via radio from another officer. Defendant presents no additional evidence and there is nothing in Special Agent Drake's testimony to indicate she made the contested statement in bad faith or that she did not believe this information to be true at the time she wrote the affidavit.
 

 Defendant has the initial burden of showing that Special Agent Drake's statement was made in reckless disregard for the truth.
 
 See
 

 Fernandez,
 

 346 N.C. at 14
 
 ,
 
 484 S.E.2d at 358
 
 . The trial court found and the record evidence indicates Special Agent Drake relied in good faith on the information the other officers provided to her.
 
 See
 

 Horner,
 

 310 N.C. at 280
 
 ,
 
 311 S.E.2d at 286
 
 . Defendant failed to meet his burden to show otherwise. Defendant's arguments are overruled.
 

 IV. Trial Court's Order Denying the Motion to Suppress
 

 A. Standard of Review
 

 This Court's review of a trial court's denial of a motion to suppress "is strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law."
 
 State v. Cooke,
 

 306 N.C. 132
 
 , 134,
 
 291 S.E.2d 618
 
 , 619 (1982). "Competent evidence is evidence that a reasonable mind might accept as adequate to support the finding."
 
 State v. Chukwu,
 

 230 N.C.App. 553
 
 , 561,
 
 749 S.E.2d 910
 
 , 916 (2013) (internal quotation marks and citation omitted). The trial court's "conclusions of law are reviewed
 
 de novo
 
 and are subject to a full review, under which this Court considers the matter anew and freely substitutes its own judgment for that of the trial court."
 
 State v. Knudsen
 
 ,
 
 229 N.C.App. 271
 
 , 281,
 
 747 S.E.2d 641
 
 , 649,
 
 disc. review denied
 
 ,
 
 367 N.C. 258
 
 ,
 
 749 S.E.2d 865
 
 (2013).
 

 *536
 
 Our Supreme Court adopted the "totality of the circumstances" test for determining whether information properly before the magistrate provided a sufficient basis for finding probable cause to issue a search warrant.
 
 State v. Arrington,
 

 311 N.C. 633
 
 , 641,
 
 319 S.E.2d 254
 
 , 259 (1984). "When reviewing a magistrate's determination of probable cause, this Court must pay great deference and sustain the magistrate's determination if there existed a substantial basis for the magistrate to conclude that articles searched for were probably present."
 
 State v. Hunt
 
 ,
 
 150 N.C.App. 101
 
 , 105,
 
 562 S.E.2d 597
 
 , 600 (2002) (citations omitted). This deference "is not without limitation. A reviewing court has the duty to ensure that a magistrate does not abdicate his or her duty by 'mere[ly]
 

 *152
 
 ratif[ying] ... the bare conclusions of [affiants].' "
 
 State v. Benters
 
 ,
 
 367 N.C. 660
 
 , 665,
 
 766 S.E.2d 593
 
 , 598 (2014) (quoting
 
 Illinois v. Gates,
 

 462 U.S. 213
 
 , 239,
 
 103 S.Ct. 2317
 
 , 2333,
 
 76 L.Ed.2d 527
 
 , 549 ).
 

 B. Analysis
 

 Article 1, Section 20 of the North Carolina Constitution provides that "[g]eneral warrants, whereby any officer or other person may be commanded to search suspected places without evidence of the act committed, ... are dangerous to liberty and shall not be granted." N.C. Const. art. I, sec. 20.
 

 A search warrant application "must be supported by one or more affidavits particularly setting forth the facts and circumstances establishing probable cause to believe that the items are in the places or in the possession of the individuals to be searched." N.C. Gen. Stat. § 15A-244(3) (2015). Probable cause for a search may exist where the stated facts in a search warrant "establish reasonable grounds to believe a search of the premises will reveal the items sought and that the items will aid in the apprehension or conviction of the offender."
 
 Fernandez,
 

 346 N.C. at 13
 
 ,
 
 484 S.E.2d at 358
 
 (citations omitted). Probable cause requires "more than bare suspicion."
 
 Brinegar v. United States
 
 ,
 
 338 U.S. 160
 
 , 175,
 
 69 S.Ct. 1302
 
 ,
 
 93 L.Ed. 1879
 
 (1949).
 

 The affidavit "must establish a nexus between the objects sought and the place to be searched."
 
 State v. Oates,
 

 224 N.C.App. 634
 
 , 644,
 
 736 S.E.2d 228
 
 , 235 (2012) (citation omitted),
 
 appeal dismissed and disc. review denied
 
 ,
 
 366 N.C. 585
 
 ,
 
 740 S.E.2d 473
 
 (2013) ;
 
 see
 

 State v. Allman
 
 , --- N.C.App. ----,
 
 781 S.E.2d 311
 
 (2016). Generally, "this connection is made by showing that criminal activity actually occurred at the location to be searched or that the fruits of a crime that occurred elsewhere are observed at a certain place."
 
 Oates
 
 ,
 
 224 N.C.App. at 644
 
 ,
 
 736 S.E.2d at 235
 
 (citation omitted). "Nowhere has either this Court or the United States Supreme Court approved an affidavit for the issuance of a search warrant that failed to implicate the premises to be searched."
 
 Campbell
 
 , 282 N.C. at 131-32, 191 S.E.2d at 757 ;
 
 see e.g.
 
 ,
 
 United States v. Harris
 
 ,
 
 403 U.S. 573
 
 ,
 
 91 S.Ct. 2075
 
 ,
 
 29 L.Ed.2d 723
 
 (1971) ;
 
 Rugendorf v. United States
 
 ,
 
 376 U.S. 528
 
 ,
 
 84 S.Ct. 825
 
 ,
 
 11 L.Ed.2d 887
 
 (1964) ;
 
 State v. Bullard
 
 ,
 
 267 N.C. 599
 
 ,
 
 148 S.E.2d 565
 
 (1966),
 
 cert. denied
 
 ,
 
 386 U.S. 917
 
 ,
 
 87 S.Ct. 876
 
 ,
 
 17 L.Ed.2d 789
 
 (1967).
 

 When making a determination of probable cause, the magistrate may not consider evidence outside the four corners of the affidavit, unless "the information is either recorded or contemporaneously summarized in the record or on the face of the warrant by the issuing official." N.C. Gen. Stat. § 15A-245(a) (2015). Our Supreme Court has stated
 
 *153
 
 it was error for a reviewing court to "rely upon facts elicited at the [suppression] hearing that [go] beyond 'the four corners of [the] warrant.' "
 
 Benters
 
 , 367 N.C. at 673-74,
 
 766 S.E.2d at 603
 
 .
 

 i. Challenged Findings of Fact
 

 Defendant argues Findings of Fact 10(c), 10(d), 10(h), and 10(n) were not supported by competent evidence. In Findings of Fact 10(c) and 10(d), Defendant challenges the trial court's finding that the NPLEx emails listed Defendant and Brown's address as 394 Low Gap Road. Defendant argues the testimony shows the officers, not NPLEx, enter the address information in the alerts and this information is not independently verified by NPLEx.
 

 Whether the addresses listed in the NPLEx records were provided or independently
 
 *537
 
 verified by NPLEx or individually entered by the officers is unclear from our review of the record. However, these findings of fact clearly do not support the trial court's conclusion that the affidavit showed probable cause to search 394 Low Gap Road. Our case law does not allow the trial court to rely on facts outside "the four corners of the warrant" in making its probable cause determination.
 
 See
 

 Benters,
 

 367 N.C. at 673-74
 
 ,
 
 766 S.E.2d at 603
 
 . The affidavit in this case only indicated both Defendant and Brown legally purchased decongestant from a Wal-Mart store on 10 September 2014. The affidavit never mentioned that this information was received via the NPLEx alerts or that any specific address was connected with these purchases.
 

 In Finding of Fact 10(h), Defendant contends the statement that "Sergeant Mease knew that residence to be Defendant's" was critical in establishing a required nexus between the objects sought and the place to be searched, but that this finding was not supported by competent evidence. Evidence in the record is conflicting regarding Sergeant Mease's knowledge that the address 394 Low Gap Road was, in fact, Defendant's residence. Sergeant Mease testified at one point that the vehicle continued up the mountain "toward [Defendant's] residence at 394 Low Gap Road," but later testified he only suspected that Defendant was dropped off at 394 Low Gap Road, because he knew Defendant lived "up at that area." While a "reasonable mind" could have concluded Sergeant Mease knew this was Defendant's address,
 
 see
 

 Chukwu,
 

 230 N.C.App. at 561
 
 , 749 S.E.2d at 916, this testimony could not be used by the trial court to find the affidavit established probable cause.
 
 See
 

 Benters,
 

 367 N.C. at 674
 
 ,
 
 766 S.E.2d at 603
 
 . Nothing in Special Agent Drake's affidavit mentioned Sergeant Mease's knowledge of Defendant's address.
 
 See
 
 id.
 

 *154
 
 We do not address Finding of Fact 10(n), as the State notes this finding relates to an action made by Defendant after the search warrant had been issued and is immaterial to this Court's determination of whether probable cause existed at the time to support the issuance of the search warrant. Ultimately, the findings of fact challenged by Defendant were based upon evidence outside the four corners of the warrant and could not be used by the trial court in making its probable cause determination.
 
 See
 

 Benters
 
 , 367 N.C. at 673-74,
 
 766 S.E.2d at 603
 
 .
 

 ii. Affidavit Does Not Support Probable Cause
 

 Second, Defendant argues the application for the search warrant and attached affidavit failed to sufficiently connect the property located at 394 Low Gap Road to the objects sought. We agree.
 

 This case is similar to
 
 State v. Campbell
 
 , wherein the Supreme Court observed that "[n]owhere in the affidavit is there any statement that narcotic drugs were ever possessed or sold in or about the dwelling to be searched" and that "[n]owhere in the affidavit are any underlying circumstances detailed from which the magistrate could reasonably conclude that the proposed search would reveal the presence of illegal drugs in the dwelling."
 
 Campbell
 
 , 282 N.C. at 131, 191 S.E.2d at 757. As such, the Court in
 
 Campbell
 
 , concluded that the facts alleged did not support an inference that narcotic drugs were illegally possessed on the premises.
 
 Id
 
 .
 
 Campbell
 
 controls where "the affidavit ... included no information indicating that drugs had been possessed in or sold from the dwelling to be searched."
 
 State v. McKinney,
 

 368 N.C. 161
 
 , 166,
 
 775 S.E.2d 821
 
 , 826 (2015) ;
 
 see
 

 Allman
 
 , --- N.C.App. at ----,
 
 781 S.E.2d at 316-17
 
 (affirming the trial court's order granting a defendant's motion to suppress where the affidavit contained no allegations evidencing the probable presence of drugs or observations of activity suggestive of drug trafficking or usage at the place to be searched).
 

 Here, Sergeant Mease initiated surveillance based upon NPLEx email alerts he and another officer had received, which alerted them that both Defendant and Brown had legally purchased pseudoephedrine at the same location within 15 minutes of one another. The affidavit and probable cause determination heavily relied on the information gleaned from that surveillance. However, only four allegations in the affidavit specifically refer to 394 Low Gap Road and none of
 
 *538
 
 these allegations establish the required nexus between the objects sought, i.e., evidence of a clandestine methamphetamine laboratory, and the place to be searched, i.e., the property located at 394 Low Gap Road.
 
 See
 

 Oates
 
 ,
 
 224 N.C.App. at 644
 
 ,
 
 736 S.E.2d at 235
 
 .
 
 *155
 
 The affidavit alleged "Stratton dropped [Defendant] at the burned [sic] residence and blue recreational vehicle/motor home located at 394 Low Gap Road, Maggie Valley, North Carolina." The affidavit then alleged that officers "established surveillance in the wooded area across the road from the 394 Low Gap Road residence ... [and] saw [Defendant] exit the recreational vehicle and start walking down the road toward Fie Top Road," and that "SA M.L. Tritt and Detective Michael Whitley simultaneously approached [Defendant] walking away from 394 Low Gap Road." Finally, the affidavit alleged that "[d]uring the encounter with [Defendant] on the roadside near 394 Low Gap Road ... SA Tritt asked for consent to search his house and recreational vehicle and [Defendant] refused consent."
 

 These allegations were not sufficient for either the magistrate or the trial court to find probable cause existed to search the residence or recreational vehicle located at 394 Low Gap Road. While Special Agent Drake testified that the affidavit references 394 Low Gap Road as Defendant's residence, this simply is not the case. The affidavit states that during Special Agent Drake's conversation with Brown, Brown informed her that Defendant "went home." Nothing in the affidavit provides context to where Defendant's "home" was or that his "home" was 394 Low Gap Road, which is where the affidavit claims he was dropped off. However, even taken from the view of the magistrate, the simple fact that an individual is dropped off at a particular address does not establish probable cause to search that address in the absence of other allegations of criminal activity.
 

 The fact that Defendant left the recreational vehicle and began walking away from property located at that address fails to provide reasonable suspicion of any criminal activity or evidence subject to seizure. Although the affidavit alleged that Brown presumed the purchased pseudoephedrine was with Defendant in the grocery bags, Brown admitted that she did not actually know where the pseudoephedrine was located. The affidavit never asserts the officers observed anything in Defendant's behavior or possession-such as drug paraphernalia, grocery bags, receipts for cold medicine purchases, or any precursors or contraband-which would cause them to suspect Defendant was operating a clandestine methamphetamine laboratory or conducting any other illegal activity on property located at 394 Low Gap Road.
 

 While Defendant's refusal of the officer's request to search the property may tend to show Defendant's ownership or control over the property, an individual's refusal to provide consent to search a property does not establish probable cause to search.
 
 See
 

 *156
 

 Florida v. Bostick
 
 ,
 
 501 U.S. 429
 
 , 437,
 
 111 S.Ct. 2382
 
 , 2387,
 
 115 L.Ed.2d 389
 
 , 400 (1991) (A "refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or a seizure."). None of these four allegations, standing alone or taken under the "totality of the circumstances," specifically allege a sufficient connection to the property located at 394 Low Gap Road to provide the issuing official with probable cause to issue a warrant to search the premises.
 
 See
 

 Arrington,
 

 311 N.C. at 641
 
 ,
 
 319 S.E.2d at 259
 
 .
 

 Further, even the additional allegations contained within the affidavit regarding Defendant and Brown's criminal histories and previous purchases of pseudoephedrine and other related products do not support any inference that illegal activity had occurred or was happening on the property at 394 Low Gap Road.
 
 See
 

 Oates
 
 ,
 
 224 N.C.App. at 644
 
 ,
 
 736 S.E.2d at 235
 
 .
 

 The affidavit attached to the application for the search warrant failed to include "facts or circumstances" to sufficiently connect the property located at 394 Low Gap Road with any illegal activity or Defendant's purported operation of a clandestine methamphetamine laboratory.
 
 See
 
 N.C. Gen. Stat. § 15A-244(3). Prior precedents never validated an affidavit for the issuance of a search warrant that failed to implicate the premises to be
 
 *539
 
 searched with criminal activity.
 
 Campbell
 
 , 282 N.C. at 131-32, 191 S.E.2d at 757 ;
 
 see
 
 N.C. Const. art. I, sec. 20. We cannot do so here.
 

 V. Good Faith Exception to the Exclusionary Rule
 

 Under the "good faith" exception to exclusionary rule, a search warrant ultimately determined to be invalid due to a lack of probable cause will be upheld when "officers acted in objectively reasonable reliance on a warrant issued by a detached and neutral [judge][.]"
 
 State
 
 v.
 
 Witherspoon,
 

 110 N.C.App. 413
 
 , 421,
 
 429 S.E.2d 783
 
 , 788 (1993) (citation and quotation marks omitted). The good faith exception to the exclusionary rule applies where evidence is suppressed pursuant to a provision of the federal Constitution.
 
 State v. McHone
 
 ,
 
 158 N.C.App. 117
 
 , 122-23,
 
 580 S.E.2d 80
 
 , 84 (2003) (citing
 
 United States v. Leon,
 

 468 U.S. 897
 
 ,
 
 104 S.Ct. 3405
 
 ,
 
 82 L.Ed.2d 677
 
 ,
 
 reh'g denied,
 

 468 U.S. 1250
 
 ,
 
 105 S.Ct. 52
 
 ,
 
 82 L.Ed.2d 942
 
 (1984) ;
 
 State v. Welch,
 

 316 N.C. 578
 
 ,
 
 342 S.E.2d 789
 
 (1986) ).
 

 Our Supreme Court has held that no good faith exception exists to the exclusionary rule for violations of the North Carolina Constitution, stating:
 

 North Carolina, however, justifies its exclusionary rule not only on deterrence but upon the preservation of the
 
 *157
 
 integrity of the judicial branch of government and its tradition based upon fifty years' experience in following the expressed public policy of the state. Under the judicial integrity theory, our constitution demands the exclusion of illegally seized evidence. The courts cannot condone or participate in the protection of those who violate the constitutional rights of others.
 

 State v. Carter
 
 ,
 
 322 N.C. 709
 
 , 723,
 
 370 S.E.2d 553
 
 , 561 (1988). The Supreme Court has also declined to extend this "good faith" exception to cases involving violations of N.C. Gen. Stat. § 15A.
 
 McHone
 
 ,
 
 158 N.C.App. at 123
 
 ,
 
 580 S.E.2d at
 
 84 ;
 
 see
 

 State v. Hyleman
 
 ,
 
 324 N.C. 506
 
 , 510-11,
 
 379 S.E.2d 830
 
 , 833 (1989) (holding that failure of the affidavit to comply with N.C. Gen. Stat. § 15A-244(3) was a substantial violation and the good faith exception to the exclusionary rule did not apply).
 

 Here, the affidavit failed to properly set forth "facts and circumstances establishing probable cause" as required under N.C. Gen. Stat. § 15A-244(3) and the North Carolina Constitution. As noted in
 
 Hyleman
 
 , "[t]he exclusion of illegally seized evidence is the greatest deterrent to similar violations in the future."
 
 Hyleman
 
 ,
 
 324 N.C. at 510
 
 ,
 
 379 S.E.2d at 833
 
 (citation omitted). The good faith exception to the exclusionary rule does not apply in this case.
 
 See
 

 id
 
 .
 

 VI. Conclusion
 

 Special Agent Drake did not act in bad faith when she submitted her application for a search warrant and attached the affidavit for determination of probable cause. The affidavit failed to establish the required nexus between the objects sought, evidence of a clandestine methamphetamine laboratory, and the place to be searched, the property located at 394 Low Gap Road.
 
 See
 

 Oates
 
 ,
 
 224 N.C.App. at 644
 
 ,
 
 736 S.E.2d at 235
 
 . The issuing judge erred in his determination that the application and affidavit provided probable cause to issue the search warrant.
 

 The trial court should have granted Defendant's motion to suppress. The judgment Defendant appeals from is reversed. This cause is remanded to the trial court for entry of an order allowing Defendant's motion to suppress.
 
 It is so ordered
 
 .
 

 REVERSED AND REMANDED.
 

 Judges CALABRIA and DAVIS concur.