IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-130-2

Filed 1 October 2024

Ashe County, Nos. 15 CRS 50792-96

STATE OF NORTH CAROLINA

v.

JOSHUA DAVID REBER

Appeal by Defendant from judgments entered 9 August 2021 by Judge Forrest D. Bridges in Ashe County Superior Court. Originally heard in the Court of Appeals on 19 October 2022, with opinion issued 16 May 2023 by a divided panel of this Court. *See State v. Reber*, 289 N.C. App. 66, 887 S.E.2d 487 (2023), ("*Reber I*"). By plurality opinion filed 23 May 2024, the Supreme Court of North Carolina reversed this Court's decision and remanded for consideration of the issues not previously addressed in *Reber I*. *See State v. Reber*, 386 N.C. 153, 900 S.E.2d 781 (2024).

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Margaret A. Force, for the State.*

*Daniel M. Blau, for the Defendant.*

WOOD, Judge.

This case is before us on remand from the Supreme Court of North Carolina for the sole purpose of considering Defendant's two remaining arguments on appeal not contemplated by this Court in *Reber I*. Namely, whether Defendant received

ineffective assistance of counsel when his attorney failed to move to suppress evidence obtained from his cell phone pursuant to a search warrant; and whether the trial court committed structural constitutional error by allowing four disqualified jurors to serve on Defendant's trial. After careful consideration of Defendant's remaining arguments, we conclude Defendant received a fair trial free from error.

## I.    Factual and Procedural Background

The factual background and history of this case are fully set forth in *Reber I* and the Supreme Court opinion further summarized and addressed the facts relevant to its holdings on the issues. *State v. Reber*, 289 N.C. App. 66, 887 S.E.2d 487 (2023), *rev'd and remanded*, 386 N.C. 153, 900 S.E.2d 781 (2024). Accordingly, we now consider only those facts pertinent to Defendant's two remaining arguments on appeal.

This case concerns the sexual abuse of a minor child, K.W.[1], spanning many years. The abuse was uncovered when K.W. informed her mother that Joshua Reber ("Defendant") had been regularly engaging in sexual acts with her. The sexual abuse began when K.W. was eight years old and ended around her eleventh birthday in 2015. K.W. testified that for over three years most incidents occurred in private locations or at nighttime, and included vaginal sex, digital penetration, and oral sex.

---

[1] A pseudonym is used to protect the identity of the juvenile pursuant to N.C. R. App. P. 42(b).

K.W. additionally testified that she communicated with Defendant on Facebook Messenger and Snapchat, where they sent nude photos to one another.

Defendant was arrested on 4 November 2015 for several counts of sexual offense with a child and rape of a child. Following his arrest, on 19 November 2015, the investigating law enforcement officer obtained a search warrant for Defendant's phone. On 15 March 2016, Agent Anderson of the SBI conducted a forensic examination of his cell phone. The information extracted from the phone indicated that the phone had not been "activated" until May 2015, one month after the alleged abuse stopped. Agent Anderson testified that various applications were installed on the phone on 15 May 2015, which, in his training and experience, is consistent with the activation of a new cell phone. Agent Anderson did not find evidence of nude photograph exchanges or other communications between Defendant and K.W. Rather, the data extraction contained thousands of text messages between Defendant and his girlfriend at that time, Danielle. Agent Anderson further testified that an attempt to conduct a forensic examination of K.W.'s device was unsuccessful due to technical issues. Thus, the search of both Defendant's and K.W.'s devices did not render any evidence indicative of K.W. and Defendant's relationship. Defendant's attorney did not file a motion to suppress the evidence discovered pursuant to the search warrant.

Defendant came on for a jury trial during the 2 August 2021 criminal session

of Ashe County Superior Court. At trial, Defendant testified on his own behalf, denied ever engaging in any sexual activities with K.W., and denied exchanging nude photos with K.W. Defendant further testified that he did not buy a new phone to hide any previous communications between him and K.W. Additionally, he stated that he had not used Snapchat during the period between 2012 and 2015 to communicate with K.W. but may have downloaded the application on one occasion in 2015 to chat with his girlfriend Danielle. On cross-examination, the State questioned Defendant about his relationship with Danielle and certain text messages exchanged between them. The first text message exchange introduced at trial concerned a prior sexual encounter that had occurred between Defendant and Danielle while she was intoxicated. The other text message exchange concerned their desire to meet at a motel to engage in sexual activity. Defendant informed Danielle that he would have to bring his daughter and ask her not to say anything about it to his grandparents because they are religious and did not condone of sexual activity outside of marriage. These text messages, discovered pursuant to the search warrant, were referenced again during the prosecutor's closing argument.

The jury was tasked with weighing K.W.'s detailed testimony against Defendant's blanket denial, as there were no witnesses or physical evidence of the alleged abuse. Ultimately, on 9 August 2021, the jury found Defendant guilty of four counts of rape of a child and six counts of sex offense with a child. The trial court

consolidated the charges and Defendant was sentenced to two consecutive terms of 300 to 420 months of imprisonment. Defendant gave oral notice of appeal in open court and filed a written notice of appeal on 13 August 2021.

In *Reber I*, Defendant argued before this Court that (1) the trial court committed plain error by allowing the State to introduce into evidence the text message exchanges between Defendant and Danielle; (2) the trial court erred by failing to intervene *ex mero motu* in response to certain statements made by the State during the prosecutor's closing argument; (3) the search warrant to access Defendant's phone was deficient and Defendant received ineffective assistance of counsel when his attorney failed to file a motion to suppress the evidence obtained therein; and (4) the trial court committed structural constitutional error by allowing multiple disqualified jurors to serve on Defendant's trial. *State v. Reber*, 289 N.C. App. 66, 74, 887 S.E.2d 487, 495 (2023). On 23 May 2024, a divided Supreme Court issued an opinion which reversed this Court's majority opinion and remanded with instruction for consideration of Defendant's remaining arguments on appeal. *State v. Reber*, 386 N.C. at 166, 900 S.E.2d at 791 (2024).

## II. Analysis

We now consider (1) whether Defendant received ineffective assistance of counsel when his attorney failed to move to suppress the search warrant granting access to Defendant's cell phone records because it was not supported by probable

cause; and (2) whether the trial court committed structural constitutional error when it allowed four jurors, who were empaneled on a preceding case during the same session of the court, to serve on Defendant's trial.

## A. Ineffective Assistance of Counsel

Whether a Defendant received ineffective assistance of counsel is reviewed *de novo* on appeal. *State v. Wilson*, 236 N.C. App. 472, 475, 762 S.E.2d 894, 896 (2014) (citation omitted). "[T]he Appellate Rules generally require that parties take some action to preserve an issue for appeal. Exceptions exist, however, allowing a party to raise an issue on appeal that was not first presented to the trial court." *State v. Meadows*, 371 N.C. 742, 746, 821 S.E.2d 402, 405 (2018) (citation omitted). Among these exceptions is a claim for ineffective assistance of counsel, allowing a party to assert this type of claim for the first time on appeal. "Generally, a claim of ineffective assistance of counsel should be considered through a motion for appropriate relief before the trial court in post-conviction proceedings and not on direct appeal." *State v. Allen*, 262 N.C. App. 284, 285, 821 S.E.2d 860, 861 (2018) (citation omitted). When this Court reviews this type of claim on direct appeal, the claim "will be decided on the merits when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing." *State v. Fair*, 354 N.C. 131, 166, 557 S.E.2d 500, 524 (2001) (citations omitted).

To establish a claim for ineffective assistance of counsel, the defendant carries the burden of satisfying a two-part test. *State v. Braswell*, 312 N.C. 553, 562, 324 S.E.2d 241, 248 (1985). This well-established test requires that

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). The first prong is measured under an objective, reasonableness standard and requires the defendant to "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *State v. Stroud*, 147 N.C. App. 549, 555, 557 S.E.2d 544, 548 (2001) (cleaned up). "Counsel is given wide latitude in matters of strategy, and the burden to show that counsel's performance fell short of the required standard is a heavy one for defendant to bear." *State v. Fletcher*, 354 N.C. 455, 482, 555 S.E.2d 534, 551 (2001). Under the second prong, establishing prejudice, the test asks "whether there is a 'reasonable probability' that, absent the errors, the result of the proceeding would have been different." *Reber*, 386 N.C. at 159, 900 S.E.2d at 787 (citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Allen*, 360

7

N.C. 297, 316, 626 S.E.2d 271, 286 (2006) (cleaned up).

To assess whether Defendant received ineffective assistance of counsel when his counsel failed to challenge the search warrant through a motion to suppress, we first must determine whether the issuance of the warrant was lawful. *See State v. Hernandez*, 899 S.E.2d 899, 913 (N.C. Ct. App. 2024) ("Had Defendant's trial counsel objected to the [search warrant], the result of the proceeding would have been the same. Thus, we can discern from the Record on appeal that Defendant was not prejudiced . . . and he did not receive [ineffective assistance of counsel]."). Defendant argues that the search warrant and supporting affidavit contain "multiple deficiencies", including failure to establish temporal proximity and failure to establish probable cause.

"Pursuant to N.C. Gen. Stat. § 15A-244, an application for a search warrant must contain a statement of probable cause and allegations of fact supporting the statement of probable cause. The statements must be supported by one or more affidavits particularly setting forth the facts and circumstances establishing probable cause." *State v. Eddings*, 280 N.C. App. 204, 209, 866 S.E.2d 499, 503 (2021) (cleaned up). The supporting affidavit "is sufficient if it supplies reasonable cause to believe that the proposed search for evidence probably will reveal the presence [of] . . . the items sought and that those items will aid in the apprehension or conviction of the offender." *State v. Arrington*, 311 N.C. 633, 636, 319 S.E.2d 254, 256 (1984) (citation

8

omitted). In other words, "[t]he affidavit must establish a nexus between the objects sought and the place to be searched." *State v. Parson*, 250 N.C. App. 142, 152, 791 S.E.2d 528, 536 (2016) (citations omitted). Whether probable cause exists is viewed under the "totality of the circumstances" test. *Id*. at 151, 791 S.E.2d at 536 (citation omitted). The totality of the circumstances test requires a "common-sense decision based on all the circumstances that there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. McCoy*, 100 N.C. App. 574, 576, 397 S.E.2d 355, 357 (1990) (cleaned up).

To establish probable cause for the issuance of a search warrant, the determination "is grounded in practical considerations" and "does not mean actual and positive cause nor import absolute certainty." *State v. Steen*, 352 N.C. 227, 243, 536 S.E.2d 1, 11 (2000) (cleaned up). Rather, "[a] magistrate may draw such reasonable inferences as he will from the material supplied to him by applicants for a warrant." *State v. Riggs*, 328 N.C. 213, 221, 400 S.E.2d 429, 434 (1991) (cleaned up). The issuing magistrate is tasked with "mak[ing] a practical, common-sense decision" and "great deference should be paid to a magistrate's determination of probable cause." *State v. Dexter*, 186 N.C. App. 587, 592, 651 S.E.2d 900, 904 (2007) (cleaned up).

In the present case, the affidavit attached to the search warrant application includes under "item to be searched":

> Verizon cell phone having cell number 828-514-1208 seized
> from the property of inmate Joshua David Reber, currently
> incarcerated in the Ashe County Detention Center, on
> _____. The phone has remained in the custody of
> Your Affiant since the seizure.

The affiant, Captain Gentry, indicated under "items to be seized", that she sought discovery of electronically stored information, such as telephone calls, text messages, contact list, photographs, and billing information. Captain Gentry's probable cause statement, detailed her training, experience, and expertise as to child sexual abuse cases, explaining that it is a "common practice" for one alleged with the commission of this offense to use a cell phone to store evidence of criminal activity, such as the exchanging of nude photographs or text messages about sexual acts. Further, Captain Gentry explained,

> Based on information provided hereafter, this Affiant
> believes that probable cause exists to conclude that the
> pertinent information may be found on the aforementioned
> device, described earlier in this application. Specifically,
> the alleged child victim has reported that the Defendant
> Joshua David Reber did send nude photos to her using such
> programs as SNAPCHAT via his cell phone. Defendant
> Reber would also send text messages containing sexual
> conduct involving the alleged victim and himself.

Ultimately, the warrant issued and the cell phone was searched, but the evidence sought was not found. The search indicated that the phone did not contain data prior to May 2015, one month after the alleged abuse stopped.

Defendant contends the search warrant application was deficient because (1)

it is not clear how or when the phone came into the officers' possession; (2) there is no time frame provided for when the illegal activity allegedly took place; and (3) there is no indication that K.W. provided investigators with the phone number that Defendant used to communicate with her, so it is impossible to confirm that the seized phone was the same phone Defendant used to commit the alleged offense. Defendant argues that, due to these errors, the warrant was unsupported by probable cause.

In considering Defendant's argument, we note an issuing magistrate is permitted to draw "reasonable inferences" from the warrant application. *Riggs*, 328 N.C. at 221, 400 S.E.2d at 434. As to Defendant's first issue, Captain Gentry clearly states how the cell phone came into the officers' possession in the affidavit—it was "seized from the property of inmate [Defendant], currently incarcerated in the Ashe County Detention Center." Thus, the magistrate could reasonably infer that the cell phone was seized at the time of Defendant's arrest. Second, although Defendant correctly states that the affidavit does not include a time frame of when the alleged illegal activity took place, it does indicate that this matter concerns an "on-going investigation" and it is "common practice" to "store information of criminal activity" on a cell phone. Further, it states that K.W. informed law enforcement that Defendant sent nude photos of himself to her over snapchat and sent text messages referencing sexual activity to her. Thus, the warrant application and affidavit contained information sufficient for a magistrate judge to conclude Captain Gentry

sought information stored on Defendant's cell phone related to K.W.'s statement. The magistrate could reasonably infer that the "time frame" would be established by evidence recovered from Defendant's phone. Lastly, Defendant's contention regarding the impossibility of confirming, prior to the search, that Defendant used that particular phone to communicate with K.W., lacks merit. Again, it is reasonable for a magistrate to have inferred that the phone in Defendant's possession at the time of his arrest and incarceration was in fact the same phone used to contact K.W. and evidence of the alleged crime would have potentially been stored on that cell phone. Accordingly, these inferences are "grounded in practical considerations" and the affidavit was not deficient for any of the three reasons raised by Defendant on appeal. *Steen*, 352 N.C. at 243, 536 S.E.2d at 11.

This Court has held, "[p]robable cause cannot be shown, however, by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the underlying circumstances upon which that belief is based." *State v. Rayfield*, 231 N.C. App. 632, 651, 752 S.E.2d 745, 759 (2014) (cleaned up). An affidavit is not purely conclusory when it details "some connection or nexus linking the [property] to illegal activity" and that "direct evidence is not always necessary to establish probable cause." *State v. Bailey*, 374 N.C. 332, 335-36, 841 S.E.2d 277, 280-81 (2020) (citation omitted). Here, Captain Gentry's affidavit established a connection linking Defendant's cell phone to illegal, sexual

12

activity with K.W. The affidavit did not simply state Captain Gentry's belief that probable cause exists, rather, it explained, her background and training on this type of criminal activity; how, in her experience, it is "common practice" for information related to the illegal activity to be stored on a cell phone; how Defendant allegedly sent nude photos to K.W. via snapchat; how Defendant sent text messages involving sexual conduct to K.W.; and that the purpose of the warrant was to find evidence of phone calls, text messages, emails, pictures, and videos. Thus, it sufficiently details that a search of Defendant's cell phone may reveal evidence of illegal sexual activity with a child. Accordingly, because the affidavit set out the underlying circumstances from which the issuing judge could find that probable cause existed to search Defendant's cell phone, we conclude that the issuance of the warrant was proper.

Having determined that probable cause existed to support the issuance of the search warrant, we now conclude that "[h]ad Defendant's trial counsel objected to the [search warrant], the result of the proceeding would have been the same." *Hernandez*, 899 S.E.2d 899, 913 (N.C. Ct. App. 2024). *See Braswell*, 312 N.C. at 563, 324 S.E.2d at 249 (Under the second prong of the ineffective assistance of counsel test, a defendant must show a "reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different."). Stated differently, had Defendant's counsel moved to suppress the evidence obtained from the search warrant, the motion would have been properly denied since the warrant

13

was sufficient to establish probable cause. Thus, Defendant is unable to show the requisite prejudice to support a "reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different." *Braswell*, 312 N.C. at 563, 324 S.E.2d at 241.

Since it is understood that "there is no reason for a court deciding an ineffective assistance of counsel claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one[,]" we need not address the first prong under the test. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069. We hold that Defendant did not satisfy the second prong of prejudice, that his "counsels errors were so serious as to deprive [him] of a fair trial." *Id.* at 687, 104 S. Ct. at 2064. Accordingly, Defendant did not receive ineffective assistance of counsel when his counsel failed to file a motion to suppress the evidence obtained from the search of his cell phone.

### B. Disqualified Jurors

Defendant next argues that the trial court committed structural constitutional error by allowing certain jurors to serve on his trial. From 2 August 2021 to 3 August 2021, the Ashe County Superior Court conducted a jury trial on a different case involving misdemeanor stalking. In that case, the jury returned a verdict of not guilty on the morning of 3 August 2021. Following the verdict, the judge, who also presided over Defendant's trial, addressed the jury. The judge informed the jurors that their

service on the misdemeanor stalking case was complete, but since the jurors were already summoned for the week, the judge asked them to stay until he figured out what the State's next case was. In the afternoon of 3 August 2021, during the same session of court, Defendant's case was called for trial. Six of the jurors from the preceding case were selected to participate in *voir dire* for Defendant's case. During the selection process, Defendant's counsel was aware that these six jurors had sat and rendered a not-guilty verdict on the case heard that same morning. Defendant's counsel did not raise any objection, and none of the jurors were challenged for cause. Ultimately, four of the six jurors were empaneled for Defendant's trial.

N.C. Gen. Stat. § 9-3 provides the qualifications of prospective jurors. It states, in relevant part, "[a] person is qualified to serve as a juror" who is "a resident of the State" and "a resident of the county[,]" who *"has not served as a juror during the preceding two years"* and "[a] person not qualified under this section is subject to challenge for cause." N.C. Gen. Stat. § 9-3 (emphasis added). On appeal, Defendant argues that the trial court acted contrary to N.C. Gen. Stat. § 9–3 when it seated the four jurors who had served on the previous case. He argues that these jurors were not permitted to serve on his case, as once the jurors sat and rendered a verdict on the previous case, they were disqualified from further service. Without disqualification, Defendant argues, the statutory mandate of "who have not served as jurors during the preceding two years" is violated. Defendant contends that this

15

improper selection amounts to a structural constitutional error that warrants automatic reversal of the verdict rendered by the jury. Further, Defendant asserts, without evidence, that because the jurors had already returned a not guilty verdict in the previous case, the four jurors "were more likely to convict [Defendant]" and thus the error was prejudicial to his trial.

Defendant argued three separate grounds upon which this issue should be reviewed on appeal, each will be addressed in turn. First, Defendant argues that "when a trial court acts contrary to a statutory mandate regarding jury selection, the error is preserved even if the defendant did not object below." We disagree. "N.C. Gen. Stat. § 9–3 specifically provides that persons not qualified to be jurors are subject to challenge for cause." *State v. Davis*, 191 N.C. App. 535, 545, 664 S.E.2d 21, 27 (2008) (citation omitted). Defendant's "sole recourse under the statute was to challenge the juror for cause. Having failed to do so at trial, he has not preserved the issue for appellate review." *Id.* (citation omitted). The court did not bar Defendant from challenging for cause and it was incumbent on Defendant to use peremptory challenges appropriately.

However, presuming, without deciding, that the trial court did violate a mandate in N.C. Gen. Stat. § 9–3, Defendant must prove more than a statutory violation. "This Court has consistently required that defendants claiming error in jury selection procedures show prejudice in addition to a statutory violation before

16

they can receive a new trial." *State v. Garcia*, 358 N.C. 382, 406–07, 597 S.E.2d 724, 743 (2004) (citations omitted). To establish prejudice in jury selection, the defendant must have exhausted all peremptory challenges. *State v. Lawrence*, 352 N.C. 1, 13, 530 S.E.2d 807, 815 (2000) (citations omitted). If peremptory challenges are unused, and the defendant makes no challenge for cause, then he cannot be said to have been forced to accept an undesirable juror. *Garcia*, 358 N.C. at 408, 597 S.E.2d at 743–44 (citation omitted). N.C. Gen. Stat. § 15A-1217 provides that, in noncapital cases, the "defendant is allowed six challenges." N.C. Gen. Stat. § 15A-1217(b). Defendant does not claim to have exhausted all challenges and the transcript indicates only two of six strikes were used. Consequently, Defendant cannot establish prejudice in the jury selection process.

Second, Defendant claims that "this Court and our Supreme Court have also reviewed unpreserved structural error despite a defendant's failure to object at trial." "Structural error is a rare form of constitutional error resulting from structural defects in the constitution of the trial mechanism which are so serious that a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence." *Garcia*, 358 N.C. at 409, 597 S.E.2d at 744 (cleaned up). Since the United States Supreme Court first identified structural error in 1991, "that Court has identified only six instances of structural error to date." *Id.* (citations omitted). Improper selection of jurors in violation of state statute is not one of the six instances

identified by the Court. *Id.* Furthermore, "the United States Supreme Court emphasizes a strong presumption *against* structural error." *Id.* at 409-10, 597 S.E.2d at 744-45 (citations omitted). Our Supreme Court "has recently declined to extend structural error analysis beyond the six cases enumerated by the United States Supreme Court." *Id.* at 410, 597 S.E.2d at 745 (citation omitted).

Defendant claims that this Court has previously "reviewed unpreserved structural error." However, both cases provided by Defendant are distinguishable from the current case. In *State v. Colbert,* the defendant was deprived of his "right to counsel." *State v. Colbert*, 311 N.C. 283, 286, 316 S.E.2d 79, 81 (1984). In *State v. Veney,* the Court similarly reviewed whether the defendant was deprived of his right to counsel. *State v. Veney*, 259 N.C. App. 915, 920, 817 S.E.2d 114, 118 (2018). Deprivation of counsel is one of the six structural errors identified by the United States Supreme Court, unlike jury selection issues. *Garcia,* 358 N.C. at 409, 597 S.E.2d at 744. Defendant states that even if this Court does not find structural error, "the error was still prejudicial and requires a new trial," regardless of the standard applied. However, as discussed *supra*, Defendant has failed to establish prejudice in the jury selection process under the facts of his case.

Lastly, Defendant asserts that this Court should review this issue "under Appellate Rule 2" to "prevent manifest injustice to a party." The exercise of Rule 2 was intended to be limited to "rare occasions." *State v. Hart,* 361 N.C. 309, 316, 644

S.E.2d 201, 205 (2007) (citations omitted). This Court has tended to invoke Rule 2 in "circumstances in which [the] substantial rights of an appellant are affected." *Id.* (citation omitted). Defendant asserts, without evidence, that his right to a fair and impartial jury was violated because four jurors who had been empaneled, despite their prior service, were more likely to find him guilty. However, Defendant has failed to demonstrate that his right to a fair and impartial jury was adversely affected. "A defendant is not entitled to any particular juror. His right to challenge is not a right to select but to reject a juror." *State v. Harris,* 338 N.C. 211, 227, 449 S.E.2d 462, 470 (1994). In *Harris,* failure to exhaust peremptory challenges evidenced "satisfaction" with the jury. *Id.* (citation omitted). Defendant had four remaining peremptory strikes but failed to use them. Defendant's decision to not exhaust his peremptory strikes does not deprive him of any substantial right that would justify invoking Rule 2.

Defendant does not satisfy any of the three grounds upon which the issue would be preserved on appeal. Presuming *arguendo* that it was preserved, Defendant is unable to show that he was prejudiced by the alleged error or that it deprived him of a fair trial.

### III.   Conclusion

For the foregoing reasons, we conclude that Defendant did not receive ineffective assistance of counsel when his counsel failed to file a motion to suppress

19

because the search warrant was proper and supported by probable cause. Further, Defendant is unable to satisfy the two-part test, as set forth in *Strickland*, to demonstrate ineffective assistance of counsel. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. We also hold that Defendant's jury selection argument, was not properly preserved for consideration by this Court. Accordingly, we hold that Defendant received a fair trial free from error.

NO ERROR.

Chief Judge DILLON and Judge COLLINS concur.