STATE v. OATES

[224 N.C. App. 634 (2012)]

STATE OF NORTH CAROLINA

v.

ANDREW JACKSON OATES

No. COA10-725-2

Filed 31 December 2012

**Search and Seizure—search warrant—probable cause—anony-
mous tip—nexus—warrant affidavit**

The trial court erred in a possession of a firearm by a con-
victed felon case by granting defendant's motion to suppress evi-
dence seized as a result of a search of defendant's residence.
Under the totality of the circumstances, a second anonymous tip
had sufficient indicia of reliability, there was a sufficient nexus
between the contraband and defendant's residence, and the war-
rant affidavit provided sufficient probable cause to permit the
search of defendant's residence.

Appeal by the State from order entered 22 March 2010 by Judge
Russell J. Lanier, Jr. in Superior Court, Sampson County. Heard in the
Court of Appeals 30 November 2010. By opinion filed on 6 September
2011, the Court of Appeals dismissed the State's appeal. By opinion
filed 5 October 2012, the North Carolina Supreme Court vacated this
Court's opinion and remanded for further consideration.

*Attorney General Roy A. Cooper, III, by Assistant Attorney
General Joan M. Cunningham, for the State.*

*Anne Bleyman, for defendant-appellee.*

STROUD, Judge.

This matter is before the Court on remand from the North
Carolina Supreme Court. For the following reasons, we reverse the
trial court's order granting defendant's motion to suppress and
remand for further proceedings.

I. Background

On 7 September 2007, Judge Paul Hardison of District Court,
Sampson County authorized a search warrant of defendant's resi-
dence at 451 McKoy Street, Clinton, North Carolina. As a result of
that search, defendant was found to be in possession of a firearm and,
on 25 February 2008, he was indicted for one count of possession of
a firearm by a convicted felon. On or about 19 November 2009, defend-

ant filed a motion to suppress evidence seized by police as a result of the 7 September 2007 search of defendant's residence. Defendant's motion to suppress came up for hearing at the 14 December 2009 Criminal Session of Superior Court, Sampson County. In open court, the trial court granted defendant's motion to suppress. The State filed written notice of appeal from the trial court's order on 30 December 2009. On 22 March 2010, the trial court entered a written order granting defendant's motion to suppress. On appeal, the State contends that the trial court erred in granting defendant's motion to suppress and "concluding that the affidavit supporting the issuance of the search warrant was insufficient to establish probable cause to search defendant's residence[.]"

This Court dismissed the State's appeal as untimely by opinion filed 6 September 2011. *State v. Oates*, ___ N.C. App. ___, 715 S.E.2d 616 (2011). In its opinion filed 5 October 2012, the Supreme Court vacated this Court's decision, holding that the State timely filed their notice of appeal, and remanded for consideration of the other issues raised. *State v. Oates*, ___ N.C. ___, 732 S.E.2d 571 (2012). Accordingly, we will consider the substantive issues raised by the parties.

## II. Motion to Suppress

In our review of a trial court's ruling on a defendant's motion to suppress, the trial court's "findings of fact will be binding on appeal if supported by competent evidence. The trial court's findings of fact must support the conclusions of law, and the conclusions of law are reviewable *de novo*." *State v. Hensley*, 201 N.C. App. 607, 609, 687 S.E.2d 309, 311, (citations omitted), *disc. rev. denied*, 364 N.C. 244, 698 S.E.2d 662 (2010). If the State fails to challenge the trial court's findings of fact, "they are deemed to be supported by competent evidence and are binding on appeal." *State v. Roberson*, 163 N.C. App. 129, 132, 592 S.E.2d 733, 735-36, *disc. rev. denied*, 358 N.C. 240, 594 S.E.2d 199 (2004).

### A. Findings of Fact

The State makes no challenge to the trial court's findings of fact #1-15 and #17; therefore they are binding on appeal. *See id.* The State does not argue that the findings are not supported by the evidence but only that "finding of fact #16 is incomplete and finding of fact #18 is actually a conclusion of law." As to finding of fact #16, it appears that the trial court summarized the information in the application for a search warrant:

16. That the information set forth in the application for search warrant and affidavit to establish probable cause states that an "anonymous caller" states, in summary, that Julio Keith is Andrew Oates' stepson, was coming to North Carolina to stay with his stepfather and had been observed <u>somewhere</u> wrapping guns. (emphasis in original)

Yet the State concedes that "the trial court was not required to make findings of fact[,]" as "there was no material conflict in the evidence" because "[t]here was no testimony taken at the hearing on defendant's motion to suppress" and the only facts before the trial court were from the application for the search warrant. *See State v. Haymond*, 203 N.C. App. 151, 158, 691 S.E.2d 108, 116 (even though the defendant contended that certain facts had been omitted from the trial court's findings because the detective "intentionally omitted material facts from his application for the search warrant . . . [that] would have disclosed that no probable cause existed[,]" this Court stated that "[w]here there is no material conflict in the evidence, findings and conclusions are not necessary even though the better practice is to find facts[,]" and therefore, "we must only consider whether the trial court's conclusions are supported by the evidence."), *disc. review denied*, 364 N.C. 600, 704 S.E.2d 275 (2010). Therefore, we need not further examine the trial court's finding #16.

The trial court's finding of fact #18 states:

18. That there is nothing stated in the application for the search warrant or the affidavit to establish probable cause that there had been, or was going to be any criminal activity taking place at the residence to be searched, or that the Defendant Andrew Oates, or Julio Keith, possessed, or were going to possess, any drugs or weapons at the residence to be searched.

As finding of fact #18 makes a determination as to whether the warrant application was sufficient to show probable cause, we agree with the State that finding #18 is a conclusion of law. *See Peoples v. Peoples*, 10 N.C. App. 402, 408, 179 S.E.2d 138, 141 (1971) (defining a "conclusion of law" as "the court's statement of the law applicable to a case in view of certain facts found to be true or assumed by the jury to be true: the final judgment or decree which the law requires in view of the facts found or the verdict brought in."). Accordingly, we turn to the State's arguments challenging the trial court's conclusions of law.

B. Conclusions of law

In addition to finding of fact #18, the State challenges all of the trial court's other conclusions of law made in its written order granting defendant's motion to suppress:

> [(1)] [N]either the application for the search warrant, nor the affidavit to support probable cause by S/A K. Eason provide probable cause for the issuance and execution of the search warrant.

> [(2)] [T]here is no nexus created in the application for the search warrant, nor in the affidavit to establish probable cause by S/A K. Eason, that anyone had seen any drugs or guns at the residence to be searched, nor that there were going to be drugs or guns at the residence to be searched and that the information received from both callers was anonymous and there is insufficient indicia as to their reliability nor is there sufficient corroborating information as to their reliability.

> [(3)] [N]o where in the application for the search warrant and affidavit to establish probable cause is stated a nexus for a probable cause for a search of the Defendant's residence at 451 McKoy Street, Clinton, NC 28328.

> [(4)] [T]he conduct of the officers in this case violated the Defendant's Fourth and Fourteenth amendment rights as secured to him by the United States Constitution as well as the rights secured to him by the North Carolina Constitution and that said conduct was in violation of N.C.G.S. Article 11, Chapter 15A.

Specifically, the State contends that the trial court's conclusions of law are erroneous because the affidavit did provide sufficient probable cause to permit the search of defendant's residence where "the informant's information was reliable, corroborated and there was a clear nexus between the items to be seized and the premises to be searched." Defendant contends that "[t]he trial court correctly granted [defendant's] motion to suppress[,]" as "the affidavit and the rest of the application in support of the search warrant did not provide probable cause for the issuance of the search warrant."

In the application for the 7 September 2007 search warrant, Kellie Eason, Special Agent for the North Carolina Bureau of Investi-

gation, made the following averments as to probable cause to search defendant's residence:

> On Thursday, September 6, 2007, Clinton Police Department Narcotics Detective D. Grady received a telephone call from a caller that wished to remain anonymous. The caller [stated that] Michelle Brown is the "common law" wife to Julio Keith, also known as "Poppy". Both Michelle Brown and Julio Keith reside in New York.
>
> —The caller stated Julio Keith was· on Federal Probation and was not to leave New York. The caller stated the reason Julio Keith was on Probation was due to drug charges. That caller said Julio Keith had drug charges in North Carolina.
>
> —The caller stated he/she observed Julio Keith wrapping up guns in brown paper, bubble wrap and a long sheet of drawing paper. The caller observed four handguns. The caller described one gun being the size of a hand with a slide on top.
>
> —The caller overheard a conversation which Julio Keith's wife asked "you're going down with a whole kilo?" The caller stated he/she has observed Julio Keith with drugs in the past. The caller stated Julio Keith has secreted drugs in his anal cavity to avoid being caught by law enforcement.
>
> —According to the caller, Julio Keith was driven to North Carolina by someone else. Julio Keith left New York on Friday, August 31, 2007 arriving in Clinton, North Carolina on Saturday, September 1, 2007 at night. Julio Keith made the statement he could make more money selling drugs in North Carolina. According to the caller, Julio Keith left New York because he thought he had sold drugs to an undercover officer. Julio Keith said he would return to New York in a week.
>
> —The caller stated Julio Keith was staying with his parents, Jessica and Andrew Oates, located at 451 McKoy Street in Clinton, North Carolina. Detective Grady checked with City of Clinton Water and Sewer Department and determined an Andrew Oates is listed

as the customer at 451 McKoy Street, Clinton, North Carolina.

—The caller stated Andrew Oates is Julio Keith's step-father. According to the caller, Andrew Oates had killed someone.

—The caller described Julio Keith as a light skin, half Puerto Rican half black male with numerous tattoos, one of which said "NY".

—This Affiant contacted Officer Jim Long of US Probation and Parole Greensboro, North Carolina office on Thursday, September 6, 2007. Officer Long stated he last met with Julio Keith on September 20, 2004. Julio Keith requested a transfer of his probation to the Southern District of New York. Julio Keith's transfer to New York was effective October 20, 2004.

—This Affiant obtained a North Carolina DMV photo-graph of Julio Keith. Detective Grady identified Julio Keith as the individual he observed on the front porch of 451 McKoy Street, Clinton, North Carolina on Thursday, September 6, 2007 at 3:22 p.m. Detective Grady also observed a vehicle at the residence registered to Andrew Oates.

—This Affiant obtained a copy of Julio Keith's Criminal History which included the following information: Lists Julio Keith's alias names as Poppyates Keith, X Poppyoates, Julia Keith, Poppy Keith, Poppy Oates, Julio S. Keith and Andrew Kennedy. Julio Keith has been charged with possession of Cocaine and Obstruct and Delay by Sampson County Sheriff's Office, Possession of Stolen Firearm and Carrying Concealed Weapon by Clinton Police Department and Robbery with a Dangerous Weapon by Clinton Police Department. Julio Keith is currently serving Federal Probation stemming from charges of Conspiracy to Distribute Cocaine and Distribution of Crack Cocaine.

—On or about June 4, 2007, Detective Grady received a telephone call from an unidentified male stating 451 McKoy Street was a drug house and something needed to be done about it.

—This Affiant obtained a copy of Andrew Oates Criminal History which showed Oates being charged with murder August 16, 1991 by Sampson County Sheriff's Office. Oates plead guilty to second degree murder and was sentenced to nine years confinement. Andrew Oates criminal history was obtained utilizing the information provided by Andrew Oates to the City of Clinton Water and Sewer Department.[1]

Our Supreme Court has stated that "[t]he Fourth Amendment to the Federal Constitution prohibits the issuance of a search warrant except upon a finding of probable cause for the search." *State v. Miller*, 282 N.C. 633, 638, 194 S.E.2d 353, 356 (1973); *see State v. McKinney*, 361 N.C. 53, 57, 637 S.E.2d 868, 871-72 (2006) ("The Fourth Amendment to the United States Constitution protects individuals 'against unreasonable searches and seizures' and provides that search warrants may only be issued 'upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.' " (quoting U.S. Const. amend. IV)). N.C. Gen. Stat. § 15A-244 (2009) states that an application for a search warrant must contain:

(1) The name and title of the applicant; and

(2) A statement that there is probable cause to believe that items subject to seizure under G.S. 15A-242 may be found in or upon a designated or described place, vehicle, or person; and

(3) Allegations of fact supporting the statement. The statements must be supported by one or more affidavits particularly setting forth the facts and circumstances establishing probable cause to believe that the items are in the places or in the possession of the individuals to be searched; and

(4) A request that the court issue a search warrant directing a search for and the seizure of the items in question.

---

1. The affidavit did not list the calls received in chronological order; in the affidavit, the 4 June 2007 call was listed after the more detailed 6 September 2007 call. For the sake of clarity, we will refer to the June call as the "first call" and the September call as the "second call."

"Reviewing courts should give great deference to the magistrate's determination of probable cause and should not conduct a de novo review of the evidence to determine whether probable cause existed at the time the warrant was issued." *McKinney*, 361 N.C. at 62, 637 S.E.2d at 875 (citation and quotation marks omitted).[2] Our Supreme Court has adopted the "totality of the circumstances" test for determining the existence of probable cause:

> The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing] that probable cause existed."

*State v. Arrington*, 311 N.C. 633, 638, 319 S.E.2d 254, 257-58 (1984) (quoting *Illinois v. Gates*, 462 U.S. 213, 238-39, 76 L.Ed. 2d 527, 548 (1983)). "When the application is based upon information provided by an informant, the affidavit should state circumstances supporting the informant's reliability and basis for the belief that a search will find the items sought." *State v. Washburn*, 201 N.C. App. 93, 100-01, 685 S.E.2d 555, 560-61 (2009) (citation omitted), *disc. review denied*, 363 N.C. 811, 692 S.E.2d 876 (2010). The information contained in the affidavit "must establish a nexus between the objects sought and the place to be searched." *State v. McCoy*, 100 N.C. App. 574, 576, 397 S.E.2d 355, 357 (1990) (citations omitted). "In cases involving an informant's tip probable cause is determined by a totality of the circumstances test after balancing the various indicia of reliability and unreliability attendant to the informant's tip." *State v. Green*, 194 N.C. App. 623, 630, 670 S.E.2d 635, 640, *aff'd*, 363 N.C. 620, 683 S.E.2d 208 (2009). Accordingly, we first address the State's arguments as to the informant's reliability.

---

2. We note that in this case, a district court judge made the determination as to probable cause in the search warrant application, rather than a magistrate. The same standard would apply to our review of a determination of probable cause by either a district court judge or a magistrate.

1. Informant's Reliability

The State first contends that "[u]nder the totality of the circumstances, the affidavit provides sufficient facts to show the informant's basis of knowledge and reliability." Defendant counters that "the anonymous sources were not sufficiently reliable or corroborated and did not provide probable cause."

When evaluating the reliability of an informant's tip "the informant's veracity, reliability, and basis of knowledge must be considered." *State v. Williams*, ___ N.C. App. ___, ___, 703 S.E.2d 905, 910 (2011) (citation omitted). "Several factors are used to assess reliability [of an informant's tip] including: (1) whether the informant was known or anonymous, (2) the informant's history of reliability, and (3) whether information provided by the informant could be and was independently corroborated by the police." *Green*, 194 N.C. App. at 627, 670 S.E.2d at 638 (citations and quotation marks omitted); *see State v. Earhart*, 134 N.C. App. 130, 134, 516 S.E.2d 883, 886 ("[I]ndependent police corroboration of the facts given by the informant are important in evaluating the reliability of the informant's tip."), *appeal dismissed*, 351 N.C. 112, 540 S.E.2d 372 (1999). We consider the totality of the circumstances in determining whether an informant's tip "sufficiently provides indicia of reliability[.]" *Williams*, ___ N.C. App. at ___, 703 S.E.2d at 910 (quoting *Gates*, 462 U.S. at 233, 76 L.Ed. 2d at 545).

An anonymous tipster obviously cannot have a verifiable "history of reliability," *see Green*, 194 N.C. App. at 627, 670 S.E.2d at 638, so in this situation, corroboration of facts provided by the tipster is the most useful method of determining the tipster's veracity and reliability. In this case, the law enforcement officers independently confirmed many of the facts provided by the tipster and they did not find any inaccuracies in the tipster's facts. Agent Eason's affidavit in the application for the search warrant contained very specific information from the second anonymous caller regarding Mr. Keith and defendant, and much of that information was verified by Agent Eason. The anonymous caller stated, and Agent Eason independently confirmed, that Mr. Keith was known as "Poppy" and resided in New York; Mr. Keith was on federal probation in New York as the result of drug charges; Mr. Keith had prior drug charges in North Carolina; Mr. Keith was present at his parents' home at 451 McKoy Street in Clinton, North Carolina; defendant was Mr. Keith's stepfather; and defendant "had killed someone." Agent Eason checked Mr. Keith's

criminal history which showed that some of Mr. Keith's alias names included: "Poppyates Keith, X Poppyoates, . . . Poppy Keith, [and] Poppy Oates[;]" Agent Eason talked with Officer Jim Long of Federal Probation and Parole and was told that Mr. Keith was on federal probation in North Carolina but his probation had been transferred to New York on 20 October 2004. Agent Eason confirmed that Mr. Keith was "serving Federal Probation stemming from charges of Conspiracy to Distribute Cocaine and Distribution of Crack Cocaine[;]" and according to his criminal record, Mr. Keith had been charged in North Carolina with drug and weapon charges, "possession of Cocaine" and "Possession of Stolen Firearm and Carrying Concealed Weapon . . . and Robbery with a Dangerous Weapon." After obtaining a North Carolina DMV photograph of Mr. Keith, Detective Grady of the Clinton Police Department, at 3:22 p.m. on 6 September 2007, observed and identified Mr. Keith on the front porch of the residence at 451 McKoy Street in Clinton, North Carolina. Detective Grady checked with City of Clinton Water and Sewer Department and determined that defendant was listed as a customer at 451 McKoy Street in Clinton and that a car parked at the residence was registered to defendant. Agent Eason checked defendant's criminal record and discovered that defendant had been charged with murder in 1991 but had "plead guilty to second degree murder and was sentenced to nine years confinement." Additionally, a prior anonymous caller on 4 June 2007 told police "451 McKoy Street was a drug house and something needed to be done about it." Although the information provided by the first anonymous caller alone certainly would not have been sufficient to support issuance of a search warrant, it tended to support the additional and more detailed information provided by the second anonymous caller. Given the specific information supplied by the anonymous callers, much of which was verified by Agent Eason, we hold that, in the totality of the circumstances, the second anonymous tip had sufficient indicia of reliability. *See State v. Brown*, 199 N.C. App. 253, 258-59, 681 S.E.2d 460, 464 (2009) (holding that because the police independently corroborated "the substantial amount of information [the informant] provided with facts gathered throughout the investigation" the Court concluded that "[t]he substantial level of detail and the independent corroboration indicated the reliability of the information [the informant] provided to [the police officer] under a totality of circumstances analysis."); *State v. Bone*, 354 N.C. 1, 10-11, 550 S.E.2d 482, 488 (2001) (as police were able to independently corroborate "almost all of the information in the anonymous tip" with the particular facts about the crime uncovered during the investigation,

this corroboration was an indication of reliability, and gave credibility to the anonymous tipster.), *cert. denied*, 535 U.S. 940, 152 L.Ed. 2d 231 (2002).

## 2. Sufficient Nexus to Defendant's Residence

The State next contends that the trial court erred in concluding that Agent Eason's affidavit did not contain a sufficient nexus between the objects sought and the place to be searched. Defendant contends that the trial court was correct in its conclusion that "no where in the application for the search warrant and affidavit to establish probable cause is stated a nexus for a probable cause for a search of the Defendant's residence at 451 McKoy Street, Clinton, NC 28328." As noted above, the affidavit in support of a search warrant "must establish a nexus between the objects sought and the place to be searched. Usually this connection is made by showing that criminal activity actually occurred at the location to be searched or that the fruits of a crime that occurred elsewhere are observed at a certain place." *McCoy*, 100 N.C. App. at 576, 397 S.E.2d at 357 (citations omitted). But when "[t]here is no firsthand evidence in the affidavits supporting this search warrant application that [contraband] had been observed . . . . North Carolina case law supports the premise that firsthand information of contraband seen in one location will sustain a finding to search a second location." *Id.* at 576-77, 397 S.E.2d at 357. "However, evidence obtained in one location cannot provide probable cause for the search of another location when the evidence offered does not 'implicate the premises to be searched.' " *Washburn*, 201 N.C. App. at 101, 685 S.E.2d at 561 (quoting *State v. Goforth*, 65 N.C. App. 302, 308, 309 S.E.2d 488, 493 (1983)).

Here, the affidavit provided sufficient nexus between the contraband and defendant's residence at 451 McKoy Street in Clinton, North Carolina. The second anonymous caller gave firsthand observations and information regarding Mr. Keith's involvement in criminal activity in New York: the caller had seen Mr. Keith with drugs and had overheard Mr. Keith's wife asking him a question regarding a quantity of drugs; the caller had seen Mr. Keith wrapping up handguns in bubble-wrap and paper, even though he was on federal probation; Mr. Keith was leaving New York because he believed that he had sold drugs to an undercover officer; and Mr. Keith was traveling to North Carolina to sell drugs. The trial court seemed to place special emphasis in finding of fact No. 16 upon the fact that the anonymous caller did not state exactly where Mr. Keith was seen wrapping up the guns,

but his location when he was wrapping the guns was not nearly as important as the information that he was travelling to a specific location—the home of "his parents, Jessica and Andrew Oates, located at 451 McKoy Street in Clinton, North Carolina"—apparently with the guns, for the purpose of selling drugs. Law enforcement officers observed Mr. Keith at this residence on 6 September 2007. Additionally, the first anonymous caller had also stated to police on 4 June 2007 that "451 McKoy Street was a drug house and something needed to be done about it." Given the second informant's firsthand observations of Mr. Keith's involvement with illegal drugs and guns in New York, *see McCoy*, 100 N.C. App. at 576-77, 397 S.E.2d at 357; Mr. Keith's plans to travel at a specific time to North Carolina to sell drugs and to stay in defendant's residence; and the confirmation that Mr. Keith was actually staying at defendant's residence during that specific time does " 'implicate the premises to be searched[,]' " *see Washburn*, 201 N.C. App. at 101, 685 S.E.2d at 561, and, therefore, provided a sufficient nexus between the contraband and defendant's residence. *See McCoy*, 100 N.C. App. at 576, 397 S.E.2d at 357.

It is true that only Mr. Keith, and not defendant, was personally implicated in ongoing criminal activity by the second anonymous caller, but the focus of the search warrant in question was not the person to be searched, but the place to be searched, as is proper under N.C. Gen. Stat. § 15A-244(2) (2007), which requires probable cause that items subject to seizure "may be found in or upon a *designated or described place*, vehicle, or person[.]" The nexus between defendant's residence and contraband was established, and it was simply defendant's misfortune that he allowed his stepson to stay at his home, thus leading the police to discover the guns as a result of their investigation of Mr. Keith's activities at defendant's residence.

3. Probable Cause to Search Defendant's Residence

Lastly, we address the issue of whether the affidavit provided sufficient information to provide probable cause to search defendant's residence. The State argues that "the information contained in the affidavit was sufficient under the totality of the circumstances test for the issuing judicial official to make a threshold determination that there was a 'fair probability' that guns and drugs would be at 451 McKoy Street, Clinton, and probable cause existed to search for them there." Defendant counters that "[t]he trial court correctly concluded that the application in support of the search warrant did not provide probable cause to search [defendant's] residence." Defendant claims

that the information provided by the two anonymous callers was too vague to support probable cause and that much of the information was "stale" as it related to past criminal activity by Mr. Keith and defendant.

As to vagueness, defendant argues that the first anonymous caller, in June, simply called the residence a "drug house" and provided no more specific information as to how the caller would have known this information, exactly what type of drugs were being sold, or who was selling them. But as we previously noted, the information from the first anonymous caller alone was not the basis of the affidavit or the finding of probable cause; it was the more specific information from the second anonymous caller. As to the second anonymous caller, defendant argues that the caller did not personally see the drugs and did not state specifically that Mr. Keith would be taking a "kilo" or the guns to defendant's house. Yet as we previously discussed, the second caller did provide many facts which were independently confirmed by law enforcement and considering all of the information provided in its entirety, logical conclusion was that Mr. Keith was coming to stay at defendant's house to sell illegal drugs and that he possessed several guns. As we have previously determined, this information created a nexus between defendant's residence and the contraband which was the subject of the search warrant, and as such was not too vague to support the finding of probable cause.

Defendant also contends that some of the information was too old to support the issuance of the warrant. Mr. Keith's criminal history was included as part of the affidavit in support of probable cause to search defendant's residence. Defendant argues that the specific dates for Mr. Keith's prior convictions were not provided. We have stated that "[w]hen evidence of previous criminal activity is advanced to support a finding of probable cause, a further examination must be made to determine if the evidence of the prior activity is stale." *McCoy*, 100 N.C. App. at 577, 397 S.E.2d at 358.

> Generally, two factors determine whether evidence of previous criminal activity is sufficient to later support a search warrant: (1) the amount of criminal activity and (2) the time period over which the activity occurred. "Absent additional facts tending to show otherwise, a one-shot type of crime, such as a single instance of possession or sale of some contraband, will support a finding of probable cause only for a few days at best." LaFave, *supra* § 3.7(a) at 78. "However, where the affi-

davit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant." *U.S. v. Johnson*, 461 F.2d 285, 287 (10th Cir. 1972). The continuity of the offense may be the most important factor in determining whether the probable cause is valid or stale.

*Id.*

Defendant is correct that the affidavit does not state the dates of Mr. Keith's previous drug and weapon charges in North Carolina. But Mr. Keith's probation was transferred from North Carolina to New York in 2004, so it could be inferred that these offenses happened prior to 2004, while Mr. Keith was living in North Carolina. But even without an exact time period, these previous offenses coupled with the additional information in the "affidavit properly recite[] facts indicating activity of a protracted and continuous nature, a course of conduct[,]" *see id.*, as Mr. Keith was placed on federal probation as early as 2004 in North Carolina for drug-related charges. Even though Mr. Keith was still on federal probation in New York, he was observed wrapping and packaging handguns which he could not legally possess; Mr. Keith continued to sell drugs in New York; and, in late August 2007, Mr. Keith had plans to travel to North Carolina for the purpose of selling drugs. In fact, his trip to North Carolina itself would be a violation of his probation. Thus, this information shows a pattern of involvement with weapons and illegal drugs from before 2004 up until August 2007. Accordingly, "the passage of time becomes less significant[,]" and "evidence of previous criminal activity" by Mr. Keith was not stale. *See id.*

The district court in making its "practical, common sense decision" could have determined from Agent Eason's affidavit that Mr. Keith, a person with a history of involvement in the illegal drug trade, had left New York for the purpose of selling drugs in North Carolina, and because he had a history of drug and gun offenses in North Carolina could have inferred that Mr. Keith would be in possession of drugs and/or guns at defendant's residence as he would be residing there during his week-long visit to North Carolina. In addition, the district court judge made his decision regarding the issuance of the search warrant knowing that Agent Eason had only a short time to act on the anonymous informant's tip. The second anonymous informant called on 6 September 2007 and reported that Mr. Keith had arrived on 1 September 2007 for a week-long stay, so that Agent Eason had

only one or two days to corroborate the information and to act on the informants' tips. Despite the shortness of time, Agent Eason corroborated a great deal of the information provided by the second informant prior to applying for the search warrant. Therefore, in applying the totality of the circumstances test prescribed in *Arrington*, 311 N.C. at 638, 319 S.E.2d at 257-58, and giving proper deference to the decision of the district court to issue the search warrant, *see McKinney*, 361 N.C. at 62, 637 S.E.2d at 875, we hold that the search warrant application provided a substantial basis for the district court judge to conclude there was probable cause to believe drugs and/or guns would be found in defendant's home.[3] *See Brown*, 199 N.C. App. at 259-60, 681 S.E.2d at 464-65 (the informant's tip combined with the independent corroboration of that information during the subsequent police investigation provided sufficient "probable cause to arrest defendant"); *Bone*, 354 N.C. at 11, 550 S.E.2d at 488 (holding that the anonymous tip independently corroborated by police established probable cause for the warrantless arrest of defendant.). Therefore, as the warrant affidavit provided sufficient probable cause to permit the search of defendant's residence, the trial court erred in allowing defendant's motion to suppress. Accordingly, we reverse the trial court's order and remand for further proceedings.

REVERSED AND REMANDED.

Judge BRYANT concurs.

Judge BEASLEY concurred prior to 17 December 2012.

---

[3]. Even though defendant was not the main focus of the information supporting the search warrant, as both Mr. Keith and defendant were convicted felons, possession of firearms by either one of them would be a crime, even if illegal drugs were not found in the residence.