IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA16-502

 Filed: 18 October 2016

Haywood County, Nos. 14 CRS 1282-83, 53529-32

STATE OF NORTH CAROLINA

 v.

MARCUS ALAN PARSON

 Appeal by defendant from judgment entered 5 January 2016 by Judge Mark

E. Powell in Haywood County Superior Court. Heard in the Court of Appeals 21

September 2016.

 Attorney General Roy Cooper, by Assistant Attorney General Ashish K. Sharda,
 for the State.

 Meghan Adelle Jones for defendant-appellant.

 TYSON, Judge.

 Marcus Alan Parson (“Defendant”) appeals from judgment entered after the

trial court denied his motion to suppress. Defendant pled guilty to trafficking

methamphetamine by manufacturing, possession of methamphetamine precursor

chemicals, and manufacturing methamphetamine, subject to and preserving his right

to appeal the trial court’s denial of his motion to suppress. We reverse and remand.
 STATE V. PARSON

 Opinion of the Court

 I. Factual Background

 On 28 October 2014, Defendant was indicted for trafficking methamphetamine

by manufacturing, trafficking methamphetamine by possession, manufacturing

methamphetamine, felony conspiracy to manufacture methamphetamine,

maintaining a vehicle/dwelling/place for controlled substances, and possession of

methamphetamine precursor chemicals.

 Defendant filed a motion to suppress the evidence seized during execution of

the search warrant. Defendant argued the affidavit attached to the application for

the search warrant did not show probable cause linking the property located at 394

Low Gap Road to the evidence being sought. Defendant also argued the affiant acted

in bad faith or reckless disregard of the facts when preparing and presenting the

application and affidavit for the search warrant.

 A. Affidavit

 State Bureau of Investigation (“SBI”) Special Agent Casey Drake prepared the

application for the search warrant and the accompanying affidavit. This case was

her first occasion to draft an application for a search warrant for a suspected

methamphetamine laboratory. She consulted with other investigating officers to

prepare the application and form her statement to show probable cause. Her

statement in support of probable cause outlined the following facts.

 -2-
 STATE V. PARSON

 Opinion of the Court

 On 10 September 2014 at 3:30 p.m., Defendant purchased “Decongestant 12hr

Max” from a local Wal-Mart store. Fifteen minutes later, Julie Brown (“Brown”)

purchased the same product at the same location. Officers with several different law

enforcement agencies established surveillance of Defendant and Brown.

 The officers observed Defendant and Brown being picked up by a vehicle driven

by James Stratton, the registered owner, with one other person. Defendant and his

companions travelled to several stores, including an ABC Store, a dollar store, and a

convenience store. Defendant purchased dog food at the dollar store, but the officers

did not observe what was purchased at the convenience store.

 The four briefly returned to Stratton’s residence at 59 Fie Top Road and

removed items from the trunk. Stratton and Defendant left again to purchase drinks

at a gas station. Brown remained at 59 Fie Top Road.

 The affidavit states that prior to returning to 59 Fie Top Road, “Stratton

dropped [Defendant] at the burned [sic] residence and blue recreational vehicle/motor

home located at 394 Low Gap Road, Maggie Valley, North Carolina.” At 6:25 p.m.

Haywood County Sheriff’s Sergeant Mease and another detective established

surveillance at 394 Low Gap Road. Approximately thirty minutes later, they

observed Defendant exit the recreational vehicle and walk in the direction towards

59 Fie Top Road. Two other officers approached Defendant as he was walking and

informed him they had information that Defendant was “cooking

 -3-
 STATE V. PARSON

 Opinion of the Court

methamphetamine.” Defendant denied this allegation and refused to allow the

officers to search the “burned” house or the recreational vehicle.

 Around the same time the officers were questioning Defendant, Haywood

County Sheriff’s Detective McAbee and SBI Special Agent Drake conducted a “knock

and talk” conversation with the occupants of 59 Fie Top Road, including Brown and

Stratton. Brown acknowledged she had purchased pseudoephedrine earlier that day

with Defendant, and that she buys pseudoephedrine to treat her allergies on a regular

basis.

 Brown stated Defendant had “went home,” but she did not know what he was

doing there. Although Brown did not know where the pseudoephedrine she had

purchased was located, she “presumed” it was with Defendant inside the grocery

bags. Brown also admitted that she had used methamphetamine in the past.

Stratton allowed the officers to walk around the home located at 59 Fie Top Road

with him, but refused to consent to a full search.

 The affidavit also contains allegations asserting Defendant and Brown had

previously purchased similar products at similar times in the past. Both Defendant

and Brown had previously been “blocked” from purchasing pseudoephedrine in the

past, indicating they had each exceeded the maximum amount of pseudoephedrine

allowed to be purchased within a thirty-day time period. The affidavit further alleges

 -4-
 STATE V. PARSON

 Opinion of the Court

that Brown, not Defendant, had previously purchased other items “consistent with

the manufacturing of methamphetamine.”

 The affidavit briefly addresses the criminal histories of Defendant and Brown.

It stated that Defendant and Brown each had previous charges for methamphetamine

in Holmes County, Florida. Brown had been convicted and sentenced to three years

of probation. Defendant had no previous convictions. Finally, the affiant makes a

general statement regarding her knowledge and experience of clandestine

methamphetamine laboratories.

 Judge Letts signed the search warrant at 10:32 p.m. on 10 September 2014

and it was executed at 11:37 p.m. The search recovered components consistent with

a clandestine methamphetamine laboratory.

 B. Additional Testimony Presented at Suppression Hearing

 The trial court received additional testimony during the suppression hearing

from Sergeant Mease and SBI Special Agent Drake. The court acknowledged much

of this testimony pertained to information outside the “four-corners of the search

warrant.” As a result, the court only relied on this additional information “to the

extent that it bears upon any issues of good or bad faith on the part of the applicant,

Special Agent Drake.”

 Sergeant Mease testified he received an email alert from the National

Precurser Log Exchange (“NPLEx”), which reported Defendant had legally purchased

 -5-
 STATE V. PARSON

 Opinion of the Court

a pseudoephedrine product at a Wal-Mart pharmacy in Waynesville. Fifteen minutes

later, another detective received a similar NPLEx email that Brown had legally

purchased a similar pseudoephedrine product at the same location. Defendant and

Brown’s addresses were both listed as 394 Low Gap Road on these alerts. Sergeant

Mease testified he was familiar with both Defendant and Brown and had been

“investigating” them for approximately four years prior to 10 September 2014.

 Law enforcement officers have access to the records of pseudoephedrine

purchases collected by NPLEx and can create “watches” to alert them when a

particular individual purchases a pseudoephedrine product. SBI Special Agent Tritt

created the NPLEx alert for Defendant. To create the NPLEx email “watch,” Special

Agent Tritt entered Defendant’s full name, approximate age, and address. Sergeant

Mease testified the address that appears on the left side of the alerts is the address

entered by the officer who created the “watch.”

 Both Sergeant Mease and Special Agent Drake were questioned at the

suppression hearing regarding the assertion in the affidavit that Stratton had

dropped Defendant off at 394 Low Gap Road. Sergeant Mease testified he only

suspected Defendant had been dropped off at 394 Low Gap Road. Sergeant Mease

based this suspicion on the return time of the vehicle and his knowledge that

Defendant lived “up at that area.” None of the officers followed Stratton’s vehicle up

the mountain or personally observed Stratton drop Defendant off at 394 Low Gap

 -6-
 STATE V. PARSON

 Opinion of the Court

Road or anywhere else. Agent Drake confirmed other residences are located on Low

Gap Road in addition to 394 Low Gap Road. Sergeant Mease conveyed much of the

information used in the application for the search warrant to Special Agent Drake.

 C. Trial Court’s Order Denying Motion to Suppress

 The trial court denied Defendant’s motion to suppress and made several

findings of fact to support its conclusion that the affidavit was based upon probable

cause. The relevant portions of the trial court’s order are as follows:

 10c. That on September 10, 2014 at approximately 3 30
 [sic] pm, Sergeant Meese received an email from NPLEx
 that Marcus Alan Parson of 394 Low Gap Road in Maggie
 Valley, North Carolina had purchased a pseudoephedrine
 product at Wal-Mart Pharmacy #1663 in Waynesville,
 North Carolina.

 10d. That on September 10, 2014 at approximately 3 45
 [sic] pm, Detective Jeff Mackey with the Maggie Valley
 Police Department received an email from NPLEx that
 Julie Anne Brown of 394 Low Gap Road in Maggie Valley,
 North Carolina had purchased a pseudoephedrine product
 at Wal-Mart Pharmacy #1663 in Waynesville, North
 Carolina. . . .

 ...

 10g. . . . At 540 [sic] pm, Stratton’s vehicle returned to 59
 Fie Top Road but Defendant was no longer in the vehicle.
 Neither Drake nor any other law enforcement officer saw
 Stratton drop off Defendant at the residence at 394 Low
 Gap Road. (emphasis supplied)

 10h. That at approximately 6:25 pm, Sergeant Mease and
 his partner, Detective Micah Phillips, set up surveillance
 upon the residence located at 394 Low Gap Road. Sergeant

 -7-
 STATE V. PARSON

 Opinion of the Court

Mease knew that residence to be Defendant’s. . . .

10i. . . . Brown admitted to Special Agent Drake that she
purchased pseudoephedrine with Defendant that day and
that she takes it on a regular basis for her allergies Brown
said she did not know where the pseudoephedrine was but
she presumed that it must be with the groceries with
Defendant Brown stated that she and Defendant had
gotten into an argument, and that he had gone home She
did not know what he was doing. . . .

...

10n. That prior to Special Agent Drake’s return to the
residence with the search warrant, Defendant overheard
that she was on the way over the officers’ radio
transmission. . . .

...

13d. That with respect to the issue of a nexus between the
property to be searched, to wit. 394 Low Gap Road, and the
fair probability that evidence related to the manufacture of
methamphetamine would be located there, the Court finds
that there is a sufficient connection. The search warrant
states that Julie Brown told Special Agent Drake that
Defendant had “went home”, presumably with the
pseudoephedrine products Defendant left the 59 Fie Top
Road residence in Stratton’s vehicle and went in the
direction of the 394 Low Gap Road evidence [sic] The
vehicle returned to 59 Fie Top Road and Defendant was no
longer in the vehicle. Law enforcement believed that
Defendant went to that residence and, in fact, set up
surveillance and actually saw him there in a short
timeframe. And finally, Defendant exercised control and
dominion over the residence at 394 Low Gap Road by
refusing law enforcement’s request to conduct a
warrantless search there. The Court finds, that in the
totality of the circumstances, there is a sufficient
connection between the property to be searched and a fair

 -8-
 STATE V. PARSON

 Opinion of the Court

 probability that evidence of a crime would be found there.

 Conclusions of Law

 ...

 3. That the search warrant application complied in all
 respects with N.C. Gen. Stat § 15A-244 Specifically, the
 Court finds that the affidavit of probable cause contained
 sufficient facts to support a fair probability that evidence
 of the crimes of manufacturing methamphetamine and
 possessing methamphetamine precursor chemicals would
 be found at the property located at 394 Low Gap Road in
 the Town of Maggie Valley, Haywood County, North
 Carolina. The information contained in the affidavit was
 timely and provided ample-connection between the
 property, Defendant’s possessory interest of the same, and
 evidence of contraband and criminal activity.

 After the trial court denied his motion to suppress, Defendant pled guilty to

trafficking in methamphetamine by manufacturing, possession of precursor

chemicals, and manufacturing methamphetamine, preserving his right to appeal the

denial of his motion to suppress. The trial court sentenced Defendant to a minimum

of 225 months and a maximum of 282 months of active imprisonment and imposed a

$250,000.00 fine. Defendant appeals from the trial court’s order denying his motion

to suppress.

 II. Issues

 Defendant argues the trial court erred in denying his motion to suppress

because: (1) the affidavit contained material omissions and statements made in

 -9-
 STATE V. PARSON

 Opinion of the Court

reckless disregard for the truth; and, (2) the affiant failed to implicate 394 Low Gap

Road with the crime alleged and objects sought.

 III. Good Faith of Affiant

 A. Standard of Review

 “A factual showing sufficient to support probable cause requires a truthful

showing of facts.” State v. Severn, 130 N.C. App. 319, 322, 502 S.E.2d 882, 884 (1998)

(citing Franks v. Delaware, 438 U.S. 154, 164-65, 57 L.Ed.2d 667, 678 (1978)). N.C.

Gen. Stat. § 15A-978(a) provides:

 A defendant may contest the validity of a search warrant
 and the admissibility of evidence obtained thereunder by
 contesting the truthfulness of the testimony showing
 probable cause for its issuance. . . . For the purposes of this
 section, truthful testimony is testimony which reports in
 good faith the circumstances relied on to establish probable
 cause.

N.C. Gen. Stat. § 15A-978(a) (2015).

 B. Analysis

 This Court has clarified that a “truthful showing of facts” does not require

“‘that every fact recited in the warrant affidavit is necessarily correct, for probable

cause may be founded upon hearsay and upon information received from informants,

as well as upon information within the affiant’s own knowledge that sometimes must

be garnered hastily.’” State v. Fernandez, 346 N.C. 1, 13, 484 S.E.2d 350, 358 (1997)

(quoting Franks, 438 U.S. at 165, 57 L.Ed.2d at 678)). This Court has also recognized

 - 10 -
 STATE V. PARSON

 Opinion of the Court

an affiant officer’s ability to rely upon information reported to her by other officers in

the performance of their duties. See State v. Horner, 310 N.C. 274, 280, 311 S.E.2d

281, 286 (1984).

 “Instead, truthful means that the information put forth is believed or

appropriately accepted by the affiant as true.” Severn, 130 N.C. App. at 322, 502

S.E.2d at 884 (internal quotation marks and citation omitted). This Court has further

held that “every false statement in an affidavit is not necessarily made in bad faith.

An affiant may be unaware that a statement is false and therefore include the

statement in the affidavit based on a good faith belief of its veracity.” Id. at 323, 502

S.E.2d at 885.

 Prior to a hearing to determine the veracity of the facts contained within the

affidavit, a defendant “must make a preliminary showing that the affiant knowingly,

or with reckless disregard for the truth, made a false statement in the affidavit.”

Fernandez, 346 N.C. at 14, 484 S.E.2d at 358. If a further evidentiary hearing is held,

only the affiant’s veracity is at issue at that hearing. Id. A defendant’s claim

asserting the affidavit contained false statements made knowingly or in reckless

disregard for the truth, “is not established merely by evidence that contradicts

assertions contained in the affidavit, or even that shows the affidavit contains false

statements. Rather, the evidence must establish facts from which the finder of fact

might conclude that the affiant alleged the facts in bad faith.” Id. (emphasis supplied).

 - 11 -
 STATE V. PARSON

 Opinion of the Court

 If a defendant establishes by a preponderance of the evidence that such

statements were made in bad faith by the affiant in order to obtain a search warrant,

the false information contained in the affidavit must be set aside. Severn, 130 N.C.

App. at 322-23, 502 S.E.2d at 884 (citing Franks, 438 U.S. at 155-56, 57 L.Ed.2d at

672). Once these statements are omitted, “‘[i]f the affidavit’s remaining content is

insufficient to establish probable cause, the search warrant must be voided and the

fruits of the search excluded to the same extent as if probable cause was lacking on

the face of the affidavit.’” Severn, 130 N.C. App. at 323, 502 S.E.2d at 884 (quoting

Franks, 438 U.S. at 156, 57 L.Ed.2d at 672).

 In the affidavit at bar, SBI Special Agent Drake stated “Stratton dropped

[Defendant] at the burned [sic] residence and blue recreational vehicle/motor home

located at 394 Low Gap Road, Maggie Valley, North Carolina.” Defendant argues

this statement must be excised from the court’s probable cause determination as it

was made in reckless disregard for the truth. We disagree.

 Although the trial court found that “[n]either Drake nor any other law

enforcement officer saw Stratton drop off Defendant at the residence at 394 Low Gap

Road,” the trial court also recognized that it does not necessarily follow that Special

Agent Drake made this statement in bad faith. See Severn, 130 N.C. App. at 323, 502

S.E.2d at 885. Special Agent Drake’s testimony during the suppression hearing, used

to determine whether she had acted in good faith, clarified she received much of the

 - 12 -
 STATE V. PARSON

 Opinion of the Court

information to draft the application for the search warrant from other officers

participating in the surveillance of Defendant.

 Special Agent Drake testified she never observed Defendant being dropped off

at 394 Low Gap Road, but had received this information via radio from another

officer. Defendant presents no additional evidence and there is nothing in Special

Agent Drake’s testimony to indicate she made the contested statement in bad faith

or that she did not believe this information to be true at the time she wrote the

affidavit.

 Defendant has the initial burden of showing that Special Agent Drake’s

statement was made in reckless disregard for the truth. See Fernandez, 346 N.C. at

14, 484 S.E.2d at 358. The trial court found and the record evidence indicates Special

Agent Drake relied in good faith on the information the other officers provided to her.

See Horner, 310 N.C. at 280, 311 S.E.2d at 286. Defendant failed to meet his burden

to show otherwise. Defendant’s arguments are overruled.

 IV. Trial Court’s Order Denying the Motion to Suppress

 A. Standard of Review

 This Court’s review of a trial court’s denial of a motion to suppress “is strictly

limited to determining whether the trial judge’s underlying findings of fact are

supported by competent evidence, in which event they are conclusively binding on

appeal, and whether those factual findings in turn support the judge’s ultimate

 - 13 -
 STATE V. PARSON

 Opinion of the Court

conclusions of law.” State v. Cooke, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982).

“Competent evidence is evidence that a reasonable mind might accept as adequate to

support the finding.” State v. Chukwu, 230 N.C. App. 553, 561, 749 S.E.2d 910, 916

(2013) (internal quotation marks and citation omitted). The trial court’s “conclusions

of law are reviewed de novo and are subject to a full review, under which this Court

considers the matter anew and freely substitutes its own judgment for that of the

trial court.” State v. Knudsen, 229 N.C. App. 271, 281, 747 S.E.2d 641, 649, disc.

review denied, 367 N.C. 258, 749 S.E.2d 865 (2013).

 Our Supreme Court adopted the “totality of the circumstances” test for

determining whether information properly before the magistrate provided a

sufficient basis for finding probable cause to issue a search warrant. State v.

Arrington, 311 N.C. 633, 641, 319 S.E.2d 254, 259 (1984). “When reviewing a

magistrate’s determination of probable cause, this Court must pay great deference

and sustain the magistrate’s determination if there existed a substantial basis for the

magistrate to conclude that articles searched for were probably present.” State v.

Hunt, 150 N.C. App. 101, 105, 562 S.E.2d 597, 600 (2002) (citations omitted). This

deference “is not without limitation. A reviewing court has the duty to ensure that a

magistrate does not abdicate his or her duty by ‘mere[ly] ratif[ying] . . . the bare

conclusions of [affiants].’” State v. Benters, 367 N.C. 660, 665, 766 S.E.2d 593, 598

(2014) (quoting Illinois v. Gates, 462 U.S 213, 239, 76 L.Ed.2d 527, 549).

 - 14 -
 STATE V. PARSON

 Opinion of the Court

 B. Analysis

 Article 1, Section 20 of the North Carolina Constitution provides that

“[g]eneral warrants, whereby any officer or other person may be commanded to search

suspected places without evidence of the act committed, . . . are dangerous to liberty

and shall not be granted.” N.C. Const. art. I, sec. 20.

 A search warrant application “must be supported by one or more affidavits

particularly setting forth the facts and circumstances establishing probable cause to

believe that the items are in the places or in the possession of the individuals to be

searched.” N.C. Gen. Stat. § 15A-244(3) (2015). Probable cause for a search may exist

where the stated facts in a search warrant “establish reasonable grounds to believe a

search of the premises will reveal the items sought and that the items will aid in the

apprehension or conviction of the offender.” Fernandez, 346 N.C. at 13, 484 S.E.2d at

358 (citations omitted). Probable cause requires “more than bare suspicion.” Brinegar

v. United States, 338 U.S. 160, 175, 93 L. Ed. 1879 (1949).

 The affidavit “must establish a nexus between the objects sought and the place

to be searched.” State v. Oates, 224 N.C. App. 634, 644, 736 S.E.2d 228, 235 (2012)

(citation omitted), appeal dismissed and disc. review denied, 366 N.C. 585, 740 S.E.2d

473 (2013); see State v. Allman, __ N.C. App. __, 781 S.E.2d 311 (2016). Generally,

“this connection is made by showing that criminal activity actually occurred at the

location to be searched or that the fruits of a crime that occurred elsewhere are

 - 15 -
 STATE V. PARSON

 Opinion of the Court

observed at a certain place.” Oates, 224 N.C. App. at 644, 736 S.E.2d at 235 (citation

omitted). “Nowhere has either this Court or the United States Supreme Court

approved an affidavit for the issuance of a search warrant that failed to implicate the

premises to be searched.” Campbell, 282 N.C. at 131-32, 191 S.E.2d at 757; see e.g.,

United States v. Harris, 403 U.S. 573, 29 L.Ed.2d 723 (1971); Rugendorf v. United

States, 376 U.S. 528, 11 L.Ed.2d 887 (1964); State v. Bullard, 267 N.C. 599, 148 S.E.2d

565 (1966), cert. denied, 386 U.S. 917, 17 L.Ed.2d 789 (1967).

 When making a determination of probable cause, the magistrate may not

consider evidence outside the four corners of the affidavit, unless “the information is

either recorded or contemporaneously summarized in the record or on the face of the

warrant by the issuing official.” N.C. Gen. Stat. § 15A-245(a) (2015). Our Supreme

Court has stated it was error for a reviewing court to “rely upon facts elicited at the

[suppression] hearing that [go] beyond ‘the four corners of [the] warrant.’’’ Benters,

367 N.C. at 673-74, 766 S.E.2d at 603.

 i. Challenged Findings of Fact

 Defendant argues Findings of Fact 10(c), 10(d), 10(h), and 10(n) were not

supported by competent evidence. In Findings of Fact 10(c) and 10(d), Defendant

challenges the trial court’s finding that the NPLEx emails listed Defendant and

Brown’s address as 394 Low Gap Road. Defendant argues the testimony shows the

 - 16 -
 STATE V. PARSON

 Opinion of the Court

officers, not NPLEx, enter the address information in the alerts and this information

is not independently verified by NPLEx.

 Whether the addresses listed in the NPLEx records were provided or

independently verified by NPLEx or individually entered by the officers is unclear

from our review of the record. However, these findings of fact clearly do not support

the trial court’s conclusion that the affidavit showed probable cause to search 394

Low Gap Road. Our case law does not allow the trial court to rely on facts outside

“the four corners of the warrant” in making its probable cause determination. See

Benters, 367 N.C. at 673-74, 766 S.E.2d at 603. The affidavit in this case only

indicated both Defendant and Brown legally purchased decongestant from a Wal-

Mart store on 10 September 2014. The affidavit never mentioned that this

information was received via the NPLEx alerts or that any specific address was

connected with these purchases.

 In Finding of Fact 10(h), Defendant contends the statement that “Sergeant

Mease knew that residence to be Defendant’s” was critical in establishing a required

nexus between the objects sought and the place to be searched, but that this finding

was not supported by competent evidence. Evidence in the record is conflicting

regarding Sergeant Mease’s knowledge that the address 394 Low Gap Road was, in

fact, Defendant’s residence. Sergeant Mease testified at one point that the vehicle

continued up the mountain “toward [Defendant’s] residence at 394 Low Gap Road,”

 - 17 -
 STATE V. PARSON

 Opinion of the Court

but later testified he only suspected that Defendant was dropped off at 394 Low Gap

Road, because he knew Defendant lived “up at that area.” While a “reasonable mind”

could have concluded Sergeant Mease knew this was Defendant’s address, see

Chukwu, 230 N.C. App. at 561, 749 S.E.2d at 916, this testimony could not be used

by the trial court to find the affidavit established probable cause. See Benters, 367

N.C. at 674, 766 S.E.2d at 603. Nothing in Special Agent Drake’s affidavit mentioned

Sergeant Mease’s knowledge of Defendant’s address. See id.

 We do not address Finding of Fact 10(n), as the State notes this finding relates

to an action made by Defendant after the search warrant had been issued and is

immaterial to this Court’s determination of whether probable cause existed at the

time to support the issuance of the search warrant. Ultimately, the findings of fact

challenged by Defendant were based upon evidence outside the four corners of the

warrant and could not be used by the trial court in making its probable cause

determination. See Benters, 367 N.C. at 673-74, 766 S.E.2d at 603.

 ii. Affidavit Does Not Support Probable Cause

 Second, Defendant argues the application for the search warrant and attached

affidavit failed to sufficiently connect the property located at 394 Low Gap Road to

the objects sought. We agree.

 This case is similar to State v. Campbell, wherein the Supreme Court observed

that “[n]owhere in the affidavit is there any statement that narcotic drugs were ever

 - 18 -
 STATE V. PARSON

 Opinion of the Court

possessed or sold in or about the dwelling to be searched” and that “[n]owhere in the

affidavit are any underlying circumstances detailed from which the magistrate could

reasonably conclude that the proposed search would reveal the presence of illegal

drugs in the dwelling.” Campbell, 282 N.C. at 131, 191 S.E.2d at 757. As such, the

Court in Campbell, concluded that the facts alleged did not support an inference that

narcotic drugs were illegally possessed on the premises. Id. Campbell controls where

“the affidavit . . . included no information indicating that drugs had been possessed

in or sold from the dwelling to be searched.” State v. McKinney, 368 N.C. 161, 166,

775 S.E.2d 821, 826 (2015); see Allman, __ N.C. App. at __, 781 S.E.2d at 316-17

(affirming the trial court’s order granting a defendant’s motion to suppress where the

affidavit contained no allegations evidencing the probable presence of drugs or

observations of activity suggestive of drug trafficking or usage at the place to be

searched).

 Here, Sergeant Mease initiated surveillance based upon NPLEx email alerts

he and another officer had received, which alerted them that both Defendant and

Brown had legally purchased pseudoephedrine at the same location within 15

minutes of one another. The affidavit and probable cause determination heavily

relied on the information gleaned from that surveillance. However, only four

allegations in the affidavit specifically refer to 394 Low Gap Road and none of these

allegations establish the required nexus between the objects sought, i.e., evidence of

 - 19 -
 STATE V. PARSON

 Opinion of the Court

a clandestine methamphetamine laboratory, and the place to be searched, i.e., the

property located at 394 Low Gap Road. See Oates, 224 N.C. App. at 644, 736 S.E.2d

at 235.

 The affidavit alleged “Stratton dropped [Defendant] at the burned [sic]

residence and blue recreational vehicle/motor home located at 394 Low Gap Road,

Maggie Valley, North Carolina.” The affidavit then alleged that officers “established

surveillance in the wooded area across the road from the 394 Low Gap Road residence

. . . [and] saw [Defendant] exit the recreational vehicle and start walking down the

road toward Fie Top Road,” and that “SA M.L. Tritt and Detective Michael Whitley

simultaneously approached [Defendant] walking away from 394 Low Gap Road.”

Finally, the affidavit alleged that “[d]uring the encounter with [Defendant] on the

roadside near 394 Low Gap Road . . . SA Tritt asked for consent to search his house

and recreational vehicle and [Defendant] refused consent.”

 These allegations were not sufficient for either the magistrate or the trial court

to find probable cause existed to search the residence or recreational vehicle located

at 394 Low Gap Road. While Special Agent Drake testified that the affidavit

references 394 Low Gap Road as Defendant’s residence, this simply is not the case.

The affidavit states that during Special Agent Drake’s conversation with Brown,

Brown informed her that Defendant “went home.” Nothing in the affidavit provides

context to where Defendant’s “home” was or that his “home” was 394 Low Gap Road,

 - 20 -
 STATE V. PARSON

 Opinion of the Court

which is where the affidavit claims he was dropped off. However, even taken from

the view of the magistrate, the simple fact that an individual is dropped off at a

particular address does not establish probable cause to search that address in the

absence of other allegations of criminal activity.

 The fact that Defendant left the recreational vehicle and began walking away

from property located at that address fails to provide reasonable suspicion of any

criminal activity or evidence subject to seizure. Although the affidavit alleged that

Brown presumed the purchased pseudoephedrine was with Defendant in the grocery

bags, Brown admitted that she did not actually know where the pseudoephedrine was

located. The affidavit never asserts the officers observed anything in Defendant’s

behavior or possession—such as drug paraphernalia, grocery bags, receipts for cold

medicine purchases, or any precursors or contraband—which would cause them to

suspect Defendant was operating a clandestine methamphetamine laboratory or

conducting any other illegal activity on property located at 394 Low Gap Road.

 While Defendant’s refusal of the officer’s request to search the property may

tend to show Defendant’s ownership or control over the property, an individual’s

refusal to provide consent to search a property does not establish probable cause to

search. See Florida v. Bostick, 501 U.S. 429, 437, 115 L. Ed. 2d 389, 400 (1991) (A

“refusal to cooperate, without more, does not furnish the minimal level of objective

justification needed for a detention or a seizure.”). None of these four allegations,

 - 21 -
 STATE V. PARSON

 Opinion of the Court

standing alone or taken under the “totality of the circumstances,” specifically allege

a sufficient connection to the property located at 394 Low Gap Road to provide the

issuing official with probable cause to issue a warrant to search the premises. See

Arrington, 311 N.C. at 641, 319 S.E.2d at 259.

 Further, even the additional allegations contained within the affidavit

regarding Defendant and Brown’s criminal histories and previous purchases of

pseudoephedrine and other related products do not support any inference that illegal

activity had occurred or was happening on the property at 394 Low Gap Road. See

Oates, 224 N.C. App. at 644, 736 S.E.2d at 235.

 The affidavit attached to the application for the search warrant failed to

include “facts or circumstances” to sufficiently connect the property located at 394

Low Gap Road with any illegal activity or Defendant’s purported operation of a

clandestine methamphetamine laboratory. See N.C. Gen. Stat. § 15A-244(3). Prior

precedents never validated an affidavit for the issuance of a search warrant that

failed to implicate the premises to be searched with criminal activity. Campbell, 282

N.C. at 131-32, 191 S.E.2d at 757; see N.C. Const. art. I, sec. 20. We cannot do so

here.

 V. Good Faith Exception to the Exclusionary Rule

 Under the “good faith” exception to exclusionary rule, a search warrant

ultimately determined to be invalid due to a lack of probable cause will be upheld

 - 22 -
 STATE V. PARSON

 Opinion of the Court

when “officers acted in objectively reasonable reliance on a warrant issued by a

detached and neutral [judge][.]” State v. Witherspoon, 110 N.C. App. 413, 421, 429

S.E.2d 783, 788 (1993) (citation and quotation marks omitted). The good faith

exception to the exclusionary rule applies where evidence is suppressed pursuant to

a provision of the federal Constitution. State v. McHone, 158 N.C. App. 117, 122-23,

580 S.E.2d 80, 84 (2003) (citing United States v. Leon, 468 U.S. 897, 82 L.Ed.2d 677,

reh'g denied, 468 U.S. 1250, 82 L.Ed.2d 942 (1984); State v. Welch, 316 N.C. 578, 342

S.E.2d 789 (1986)).

 Our Supreme Court has held that no good faith exception exists to the

exclusionary rule for violations of the North Carolina Constitution, stating:

 North Carolina, however, justifies its exclusionary rule not
 only on deterrence but upon the preservation of the
 integrity of the judicial branch of government and its
 tradition based upon fifty years’ experience in following the
 expressed public policy of the state. Under the judicial
 integrity theory, our constitution demands the exclusion of
 illegally seized evidence. The courts cannot condone or
 participate in the protection of those who violate the
 constitutional rights of others.

State v. Carter, 322 N.C. 709, 723, 370 S.E.2d 553, 561 (1988). The Supreme Court

has also declined to extend this “good faith” exception to cases involving violations of

N.C. Gen. Stat. § 15A. McHone, 158 N.C. App. at 123, 580 S.E.2d at 84; see State v.

Hyleman, 324 N.C. 506, 510-11, 379 S.E.2d 830, 833 (1989) (holding that failure of

 - 23 -
 STATE V. PARSON

 Opinion of the Court

the affidavit to comply with N.C. Gen. Stat. §15A-244(3) was a substantial violation

and the good faith exception to the exclusionary rule did not apply).

 Here, the affidavit failed to properly set forth “facts and circumstances

establishing probable cause” as required under N.C. Gen. Stat. §15A-244(3) and the

North Carolina Constitution. As noted in Hyleman, “[t]he exclusion of illegally seized

evidence is the greatest deterrent to similar violations in the future.” Hyleman, 324

N.C. at 510, 379 S.E.2d at 833 (citation omitted). The good faith exception to the

exclusionary rule does not apply in this case. See id.

 VI. Conclusion

 Special Agent Drake did not act in bad faith when she submitted her

application for a search warrant and attached the affidavit for determination of

probable cause. The affidavit failed to establish the required nexus between the

objects sought, evidence of a clandestine methamphetamine laboratory, and the place

to be searched, the property located at 394 Low Gap Road. See Oates, 224 N.C. App.

at 644, 736 S.E.2d at 235. The issuing judge erred in his determination that the

application and affidavit provided probable cause to issue the search warrant.

 The trial court should have granted Defendant’s motion to suppress. The

judgment Defendant appeals from is reversed. This cause is remanded to the trial

court for entry of an order allowing Defendant’s motion to suppress. It is so ordered.

 REVERSED AND REMANDED.

 - 24 -
 STATE V. PARSON

 Opinion of the Court

Judges CALABRIA and DAVIS concur.

 - 25 -